**02D03-2207-PL-000223**

Filed: 7/26/2022 8:40 AM
Clerk
Allen County, Indiana
BB

Allen Superior Court

USDC IN/ND case 1:22-cv-00283-HAB  document 5    filed 07/26/22    page 1 of 53

| | |
|---|---|
| STATE OF INDIANA ) | IN THE ALLEN SUPERIOR COURT |
| )SS | CIVIL DIVISION |
| COUNTY OF ALLEN ) | CAUSE NO: |

| | |
|---|---|
| CHERYL A, BERGER ) | |
| Plaintiff ) | |
| v. ) | |
| ) | |
| ZURICH AMERICAN INSURANCE COMPANY ) | |
| Defendant ) | |

## **COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff for her claim for relief alleges and states as follows:

1.     Brent E. Berger ("Brent") was an employee of Edward D. Jones & Co. ("Jones") from approximately August 1, 2001 though August 5, 2020.

2.     On August 1, 2001, Brent enrolled in a basic group accident policy through Edward D. Jones & Co. Employees Health & Welfare Program under policy number GTU 4379705.

3.     Policy number GTU 4379705 was written by Defendant, Zurich American Insurance Company ("Zurich").

4.     Zurich policy number GTU 437905 allowed a Jones' employee to purchase additional accidental death benefits in $100,000.00 increments up to and including a maximum of one million dollars ($1,000,000.00).

6.     Brent purchased additional accidental death insurance in the principal sum of One Million Dollars ($1,000,000.00) under Zurich policy number GTU 4379707.

7.     Brent remained insured under both Zurich policies numbered GTU 4379705 and GTU 4379707, on a continuous basis, from January 1, 2013 until the date of his death in Allen County, Indiana on August 5, 2020.

8.     On August 5, 2020, Brent was a Covered Person under Zurich policy GTU 4379705

and GTU 4379707, copies which are attached hereto as Exhibits "A" and "B".

9.      Pursuant to the Allen County Indiana Coroner's Verdict issued on October 12, 2020, Brent manner of death was determined to be accidental with the primary cause of death being a right neck chop/stab injury with contributing factors of coronary arterial thrombosis with underlying atherosclerosis.

10.      Brent's Indiana State Department of Health Certificate of Death concurred in both the manner of death and contributing factors.

11.      Cheryl E. Berger ("Cheryl") was Brent's surviving spouse and named beneficiary under both policies.

12.      Cheryl filed claims against both policies with Zurich on or about October 1, 2020 in accordance with the provisions of Zurich's policies numbered GTU 4379705 and GTU 4739707.

13.      Cheryl's filed claims requested the payment of the policy limits of One Hundred Thousand ($100,000.00) and One Million Dollars ($1,000,000.00).

14.      To date, Zurich has neither accepted nor rejected Cheryl's claim under either or both policies.

15.      Zurich has spent the last twenty one (21) months pursuing informal discovery of what can best be described as Brent's prior medical history.

16.      Zurich policy GTU 4379705 contains an arbitration provision which bars the institution of a lawsuit by a Covered Person.

17.      Zurich policy GTU 4379707 does not contain an arbitration provision.

18.      On two (2) separate occasions, Cheryl has requested, in writing, that the arbitration provisions be implemented.

19.   Cheryl believes that judicial economy can best be obtained by consolidating both Zurich policies under a single arbitration proceeding.

20.   To date, Zurich has neither accepted nor rejected Cheryl's arbitration demand.

21.   Certain controversies have arisen between Plaintiff and Defendant concerning the legal requirements of the referenced insurance policies.

22.   A declaration of the rights of the parties will terminate the controversies before one of the parties suffer irreparable damages.

23.   The controversies are as follows:

23.1   Whether Brent was a Covered Person whose death on August 5, 2020 fell within the definition of a Covered Injury which resulted from a Covered Accident thereby resulting in a Covered Loss under both policies.

23.2   Whether the arbitration provisions of Zurich policy GTU 4379705 should be implemented.

23.3   Whether both Zurich policies should be consolidated under a single arbitration proceeding.

WHEREFORE, Plaintiff, Cheryl A. Berger, respectfully requests that a Declaratory Judgment be entered in her favor declaring that:

a.   Brent was a Covered Person under Zurich policy numbered GTU 4379705 and GTU 4379707, on the date of his death, August 5, 2020;

b.   The arbitration provisions of Zurich policy number GTU 4379705 shall be implemented;

c.   Both Zurich policies shall be consolidated under a single arbitration

proceeding;

d.    Zurich and Cheryl shall be ordered to proceed to arbitration;

e.    For all other just and proper relief in the premises.

HELMKE BEAMS LLP

_____
Daniel J. Borgmann
Supreme Court ID #2842-02
1116 E. Berry Street
Suite 1900
Fort Wayne, IN 46802
260/422-7422
Attorney for Petitioner
djborgmann@helmkebeams.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she electronically filed the foregoing document using the Indiana E-Filing System (IEFS) and that on the 26 day of July, 2022, the foregoing document was served upon the following via USPS, certified mail:

ZURICH AMERICAN INSURANCE COMPANY, Highest Ranking Officer, 4 World Trade Center, 150 Greenwich Street, New York, NY 10007
ZURICH AMERICAN INSURANCE COMPANY, Highest Ranking Officer, 1299 Zurich Way, Schaumburg, IL 60196-1056

_____
Daniel J. Borgmann

**02D03-2207-PL-000223**

USDC IN/ND case 1:22-cv-00283-HAB-SLC   document 5   filed 07/26/22   page 5 of 53

Filed: 7/26/2022 8:40 AM
Clerk
Allen County, Indiana
BB

Allen Superior Court 8

## Group Accident Policy



**ZURICH AMERICAN INSURANCE COMPANY**
Schaumburg, Illinois

In return for the payment of premium expressed in the **Schedule**, **We** agree to pay the benefits of this Group **Accident Policy** to the persons insured hereunder, subject to the terms and conditions, which follow. **We** have issued the Group **Accident Policy** to the **Policyholder**. The Group **Accident Policy** is executed as of the **Policy** date which is its date of issue, and from which anniversary dates are measured. The Group **Accident Policy** is delivered in, and subject to the laws of the Contract Situs in which it is issued.

### THIS GROUP ACCIDENT INSURANCE POLICY PROVIDES ACCIDENT COVERAGE ONLY
### THIS POLICY DOES NOT PROVIDE COVERAGE FOR SICKNESS

**POLICYHOLDER:**   Edward D. Jones & Co. Employees Health & Welfare Program
12555 Manchester Road
St. Louis, MO 63131

**POLICY** NUMBER:   GTU 4379705

**POLICY** DATE:   January 1, 2013 to Continuous
(All Insurance begins and ends at 12:01 a.m. at **Policyholder's** Address)

CONTRACT SITUS:   Missouri

The following pages, including any riders, endorsements, schedule pages, **Insured** enrollment forms, applications or amendments, are a part of this Group **Accident Policy**. **We** and the **Policyholder** have agreed to all the terms of this Group **Accident Policy**.

This is a legal contract between the **Policyholder** and **Us**.
READ THE GROUP **ACCIDENT POLICY** CAREFULLY

In Witness Whereof, **We** have caused this **Policy** to be executed and attested, and, if required by state law, this **Policy** will not be valid unless countersigned by **Our** authorized representative.

*Nancy D. Mueller*

Nancy D. Mueller
President
Zurich American Insurance Company

*Dennis F. Kerrigan, Jr.*

Dennis F. Kerrigan, Jr.
Corporate Secretary
Zurich American Insurance Company

### NON-PARTICIPATING

EXHIBIT
A

U-VA-100-A (MO)   (07/06)
Page 1 of 16

## TABLE OF CONTENTS

| | |
|---|---|
| Section I | ELIGIBILITY AND<br>EFFECTIVE DATES OF INSURANCE |
| Section II | SCHEDULE |
| Section III | DEFINITIONS |
| Section IV | **COVERAGES** |
| Section V | BENEFITS |
| Section VI | ADDITIONAL BENEFITS |
| Section VII | GENERAL EXCLUSIONS |
| Section VIII | GENERAL LIMITATIONS |
| Section IX | TERMINATION OF INSURANCE |
| Section X | HOW TO FILE A CLAIM |
| Section XI | PAYMENT OF CLAIMS |
| Section XII | GENERAL **POLICY** CONDITIONS |

## SECTION I – ELIGIBILITY AND EFFECTIVE DATES OF INSURANCE

**ELIGIBILITY AND CLASSIFICATION OF INSUREDS:**

The following individuals are eligible to become **Insureds** upon completion of the **Service Waiting Period** as indicated below, and the submission of completed enrollment material, if required:

**Class I:** All **Active** full-time Branch Office Administrators, Home Office Associates, and Transitional Representatives of the **Policyholder**. Full-time status shall be defined in the **Policyholder's Plan**. Currently full-time status is defined as working 35 hours per week or more.

**Class II:** All **Active** full-time Financial Advisors and General Partners of the **Policyholder**. Full-time status shall be defined in the **Policyholder's Plan**. Currently full-time status is defined as working 35 hours per week or more.

**Base Annual Pay** means the employees' base annual salary including bonuses (excluding Limited Partner Bonus) and commissions. If the employee has less than one year of service, the employee's rate of basic annual pay is an amount equal to 12 times his or her monthly pay. Basic annual pay is calculated as of December 31, with the resulting amount used during the following calendar year as the basis for computing the employee's Life and Accidental Death & Dismemberment Insurance benefits.

If a **Covered Person** suffers an **Injury** resulting in a **Covered Loss**, and he or she is covered under more than one class, **We** will pay only one benefit, the largest benefit.

**ELIGIBILITY OF INSURED'S DEPENDENTS:**

Individuals who enroll may elect to cover their eligible **Dependents**. An eligible **Dependent** includes the **Insured's** legally married **Spouse/Domestic Partner** and the **Insured's Dependent Child(ren)**, and his or her legally married **Spouse's Dependent Child(ren)**, and his or her **Domestic Partner's Dependent Child(ren)**. A legally married **Spouse/Domestic Partner** will not be eligible as a **Dependent** if he or she is also an **Insured** under this **Policy**. If the **Insured** and his or her legally married **Spouse/Domestic Partner**, legally separated **Spouse/Domestic Partner**, former **Spouse/Domestic Partner** are both **Insured's** under this **Policy**, only one may select a **Plan** covering their mutual **Dependents**.

**SERVICE WAITING PERIOD:**

60 days of **Active** continuous service.

**EFFECTIVE DATE OF INSURANCE FOR THE INSURED:**

A. For eligible individuals hired prior to January 1, 2013:
   January 1, 2013, provided the completed enrollment material is received by the **Policyholder** on or prior thereto.

B. For eligible individuals hired on or after January 1, 2013:
   on the first day of the month following completion of the required **Service Waiting Period** indicated above, provided the completed enrollment material is received by the **Policyholder** prior thereto.

## SECTION II – SCHEDULE

| **COVERAGE(S):** | **Classes Covered** |
|---|---|
| 24 Hour **Accident** Protection, Business and Pleasure, Excluding Corporate Owned or Leased Aircraft, H-1 | All |
| Exposure and Disappearance Coverage | All |

| **BENEFITS:** | **Classes Covered** |
|---|---|
| **Accidental Death Benefit** | All |

**Principal Sum:**

**Class I:** An employee may purchase an amount of **Principal Sum** from a minimum of $25,000 to a maximum of $1,000,000 in increments of $25,000 (Note: **Principal Sum** amounts of $100,000 or more must be purchased in increments of $100,000). However, for a **Class I** employee, amounts applied for in excess of $300,000 must not exceed ten (10) times the employee's **Base Annual Pay**.

**Class II:** An employee may purchase an amount of **Principal Sum** from a minimum of $25,000 to a maximum of $1,000,000 in increments of $25,000 (Note: **Principal Sum** amounts of $100,000 or more must be purchased in increments of $100,000).

The **Principal Sum** for **Covered Dependents** will be a percentage of the **Insured's Principal Sum**, as follows:

| Plan Selected | % Spouse/Domestic Partner | % Child(ren) |
|---|---|---|
| **Spouse/Domestic Partner** only: | 60% | 0 |
| **Dependent Child(ren)** only: | 0 | 15% |
| **Spouse/Domestic Partner** and | | |
| **Dependent Child(ren)** | 50% | 10% |

Maximum of $25,000 **Principal Sum** for **Dependent Child(ren)**.

|  | Classes Covered |
|---|---|
| **Accidental Dismemberment and Covered Loss of Use Benefit** | All |
| **Principal Sum:** | |
| Same as above. | |
| | |
| Coma Benefit | All |
| In-Hospital Indemnity Benefit | Insured Employees |

| **ADDITIONAL BENEFITS:** | Classes Covered |
|---|---|
| Additional Dismemberment Benefit for Children | All |
| After School Care Benefit | All |
| Carjacking Benefit | All |
| COBRA Benefit | All |
| Common Disaster Benefit | All |
| Day Care Benefit | All |
| Felonious Assault Benefit | All |
| Hearing Aid or Prosthetic Appliance Benefit | All |
| Higher Education Benefit | All |
| Home Alteration and Vehicle Modification Benefit | All |
| Rehabilitation Benefit | All |
| Seat Belt/Air Bag Benefit | All |
| Spouse/Domestic Partner Retraining Benefit | All |
| Surviving Spouse/Domestic Partner Benefit | All |
| Therapeutic Counseling Benefit | All |

| **ADDITIONAL ENDORSEMENTS** | Form Number | Classes Covered |
|---|---|---|
| Amendments to General Exclusions | U-VA-104-A (MO) (09/06) | All |
| Civil Union Endorsement | U-GU-567-A IL (07/11) | All |

| Enrollment Required: | ☑ Yes    ☐ No |
|---|---|
| Premium Due Date: | First day of each month |

| Premium: | Employee Only: | $0.010 per $1,000 of **Principal Sum** per month |
|---|---|---|
| | Employee & Dependents: | $0.017 per $1,000 of **Principal Sum** per month |
| | | These rates are guaranteed until January 1, 2015. |

## SECTION III – DEFINITIONS

**Accident** or **Accidental** means a sudden, unexpected, specific and abrupt event that occurs by chance at an identifiable time and place during the **Policy** term.

**Active** and **Actively at Work** describes an employee who is able and available for active performance of all of his or her regular duties. Short term absence because of a regularly scheduled day off, holiday, vacation day, jury duty, funeral leave, or personal time off is considered **Actively at Work** provided the employee is able and available for active performance of all of his or her regular duties and was working the day immediately prior to the date of his or her absence.

**Aggregate Limit of Liability** means the total benefits **We** will pay for a **Covered Accident** or **Covered Accidents** set forth in the Schedule. For purposes of the **Aggregate Limit of Liability** provision, **Covered Accident** or **Covered Accidents** will include a **Covered Loss** or **Covered Losses** arising out of a single event or related events or originating cause and includes a resulting **Covered Loss** or **Covered Losses**. If the total benefits under the **Aggregate Limit of Liability** is not enough to pay full benefits to each **Covered Person**, **We** will pay each one a reduced benefit based upon the proportion that the **Aggregate Limit of Liability** bears to the total benefits which would otherwise be paid.

**Chartered Aircraft** means an aircraft operated by a company with an air carrier or commercial operating certificate issued by the Federal Aviation Administration or the equivalent certificate issued by a foreign government, which the **Policyholder** has the right to use for no more than ten (10) consecutive days and/or for no more than twenty-five (25) days in a one (1) year period.

**Controlled** by, as used in the **Coverages** Section, means the **Policyholder** has the right to use a block of aircraft flight time for 25 or more hours in a one (1) year period or for 100 hours or more without a specified term, from a company which is in the business of providing aircraft for private use. A **Chartered Aircraft** will not be considered **Controlled** by the **Policyholder**.

**Coverage(s)** means the event or events described in the **Hazards** of this **Policy** to which benefits and additional benefits apply. The **Hazards** are listed in the **Coverages** Section on the Schedule.

**Covered Accident** means an **Accident** that results in a **Covered Loss**.

**Covered Injury** means an **Injury** directly caused by accidental means which is independent of all other causes, results from a **Covered Accident**, occurs while the **Covered Person** is insured under this **Policy**, and results in a **Covered Loss**.

**Covered Loss** means a loss which meets the requisites of one or more benefits or additional benefits, results from a **Covered Injury**, and for which benefits are payable under this **Policy**.

**Covered Person** means any person who has insurance under the terms of this **Policy**. It includes the **Insured** and his or her **Spouse/Domestic Partner** and/or **Dependent Child(ren)** if a **Plan** covering the **Spouse/Domestic Partner** and/or **Dependent Child(ren)** is selected.

**Dependent** means an **Insured's Spouse/Domestic Partner** and **Dependent Child(ren)**, as defined in this section. The **Dependent** will only be a **Covered Dependent** if a **Plan** covering **Dependents** is selected.

**Dependent Child(ren)**, if used in this **Policy**, means those unmarried **Child(ren)** of the **Insured** who rely on the **Insured** for more than 50% of their support, and are either: 1) less than 19 (nineteen) years of age; 2) less than 26 (twenty-six) years of age and enrolled on a full-time basis in a college, university, or trade school, or who satisfy neither 1) nor 2), but who prior to his or her termination of coverage became incapable of self-sustaining employment by reason of mental retardation or physical handicap. The **Dependent Child(ren)** will only be **Covered Dependent Child(ren)** if a **Plan** covering **Dependent Child(ren)** is selected.

**Domestic Partner** means as defined in the **Policyholder's** medical plan as on file and approved by **Us**.

**Injury** means a bodily **Injury**.

**Insured** means an individual who is eligible for **Coverage** under this **Policy** as provided in the Eligibility and Classification of Insureds part of Section I, and who completes the enrollment material, if required.

**Owned Aircraft** means an aircraft in which the **Policyholder** or a related company has legal or equitable title. Fractional ownership in a company which is in the business of providing aircraft for private use will be deemed to be equitable title in the aircraft used by the **Policyholder**.

**Plan** means the **Plan** design as described on the Schedule.

**Policy** means this Group **Accident** Insurance **Policy**.

**Policyholder** means the group named on the front page of this **Policy**.

**Specialized Aviation Activity** means an aircraft while it is being used for one or more of the following activities:

| | |
|---|---|
| acrobatic or stunt flying | hang gliding |
| aerial photography | hunting |
| banner towing | parachuting or skydiving |
| bird or fowl herding | pipe line inspection |
| crop dusting | power line inspection |
| crop seeding | racing |
| crop spraying | skywriting |
| endurance tests | test or experimental purpose |
| exploration | |
| fire fighting | |
| flight on a rocket-propelled or rocket launched aircraft | |
| flight which requires a special permit or waiver from the authority having jurisdiction over civil aviation, even though granted | |

**Spouse**, if used in this **Policy**, means the **Insured's** legally married **Spouse** under age 70. A **Spouse** will only be a **Covered Spouse** if a **Plan** covering the **Insured's Spouse** is selected.

**Under lease**, as used in the **Coverages** Section, means an aircraft which the **Policyholder** does not own but has the right to use, under a written agreement, for more than ten (10) consecutive days and/or for more than fifteen (15) days in a one (1) year period. A **Chartered Aircraft** will not be considered **Under lease**.

**We**, **Us**, and **Our** refers to Zurich American Insurance Company.

## SECTION IV – COVERAGES

### 24 HOUR ACCIDENT PROTECTION, BUSINESS AND PLEASURE EXCLUDING CORPORATE OWNED OR LEASED AIRCRAFT, H-1

The **Hazards** insured against by this **Policy** are:

A **Covered Injury** sustained by a **Covered Person** anywhere in the world, subject to the terms, conditions, exclusions and limitations under this **Policy**.

**Hazard Limitations:**

Air travel **Coverage** is limited to a loss sustained during a trip, while the **Covered Person** is a passenger, riding in or on, boarding or getting off:

A. any civilian aircraft with a current and valid normal, transport, or commuter type standard airworthiness certificate as defined by the Federal Aviation Administration or its successor or an equivalent certification from a foreign government. This aircraft must be operated by a pilot with a current and valid:

   1. medical certificate; and

   2. pilot certificate with a proper rating to pilot such aircraft.

B. any aircraft which is not subject to a certificate of airworthiness; whose design and customary and regular purpose is for transporting passengers; and which is operated by the Armed Forces of the United States of America or the Armed Forces of any foreign government.

**Hazard Exclusions:**

**Coverage** is not provided:

A. If the **Covered Person** is the pilot, operator, member of the crew or cabin attendant of any aircraft.

B. Unless **We** have previously consented in writing to the use, **Coverage** is not provided for any loss, caused by, contributed to, resulting from riding in or on, boarding, or getting off:

   1. any aircraft other than those expressly stated in this **Coverage**;

   2. any aircraft **Owned** or **Controlled** by, or **Under lease** to the **Policyholder**.

   3. any aircraft **Owned** or **Controlled** by, or **Under lease** to an **Insured** or a member of an **Insured's** family or household;

   4. any aircraft operated by the **Policyholder** or one of the Policyholder's employees including members of an employee's family or household;

5. any aircraft engaged in a **Specialized Aviation Activity;**
6. any conveyance used for tests or experimental purposes, or in a race or speed test.

Other Limitations and Exclusions that apply to this **Hazard** are in Section VII General Exclusions and Section VIII General Limitations.

## EXPOSURE AND DISAPPEARANCE COVERAGE

If a **Covered Person** is exposed to weather because of an **Accident** and this results in a **Covered Loss, We** will pay the applicable **Principal Sum,** subject to all **Policy** terms.

If the conveyance in which a **Covered Person** is riding disappears, is wrecked, or sinks, and the **Covered Person** is not found within 365 days of the event, **We** will presume that the person lost his or her life as a result of **Injury.** If travel in such conveyance was covered under the terms of this **Policy, We** will pay the applicable **Principal Sum,** subject to all **Policy** terms. **We** have the right to recover the benefit if **We** find that the **Covered Person** survived the event.

Limitations and Exclusions that apply to this **Hazard** are in Section VII General Exclusions and Section VIII General Limitations.

## SECTION V – BENEFITS

### ACCIDENTAL DEATH BENEFIT

If a **Covered Person** suffers a loss of life as a result of a **Covered Injury, We** will pay the applicable **Principal Sum.** The death must occur within 365 days of the **Covered Injury.**

This benefit is subject to the limitations in Section VIII General Limitations.

### ACCIDENTAL DISMEMBERMENT AND COVERED LOSS OF USE BENEFIT

If an **Injury** to a **Covered Person** results in any of the following **Covered Losses, We** will pay the benefit amount shown. The **Covered Loss** must occur within 365 days of the **Accident.**

The benefit amounts are based on the **Principal Sum** of the person suffering the **Covered Loss.**

| Covered Loss of | Benefit |
|---|---|
| 1. Both Hands or Both Feet | **Principal Sum** |
| 2. One Hand and One Foot | **Principal Sum** |
| 3. One Hand or One Foot plus the loss of Sight of One Eye | **Principal Sum** |
| 4. Sight of Both Eyes | **Principal Sum** |
| 5. Speech and Hearing | **Principal Sum** |
| 6. Speech or Hearing | 50% of **Principal Sum** |
| 7. One Hand; One Foot; or Sight of One Eye | 50% of **Principal Sum** |
| 8. Thumb and Index Finger of the same Hand | 25% of **Principal Sum** |

| Covered Loss of Use of | |
|---|---|
| 1. Four Limbs | **Principal Sum** |
| 2. Three Limbs | 75% of **Principal Sum** |
| 3. Two Limbs | 66 2/3% of **Principal Sum** |
| 4. One Limb | 50% of **Principal Sum** |

For purposes of this benefit:
1. **Covered Loss** means as applicable:
   a. For a foot or hand, actual severance through or above an ankle or wrist joint;
   b. Actual severance through or above the metacarpophalangeal joint of a thumb or index finger;
   c. Total and permanent loss of sight;
   d. Total and permanent loss of speech;
   e. Total and permanent loss of hearing; or
2. **Covered Loss of Use** means total paralysis of a **Limb** or **Limbs,** which is determined by **Our** competent medical authority to be permanent, complete and irreversible. **Limb** means an arm or a leg.

This benefit is subject to the limitations in Section VIII General Limitations.

**COMA BENEFIT**

If a **Covered Person** suffers an **Injury** resulting in a **Covered Loss** within 365 days of a **Covered Accident**, and such **Injury** causes the **Covered Person** to be in a **Coma** for at least thirty-one (31) consecutive days, **We** will pay a **Coma Benefit**.

The **Coma Benefit** is equal to 1% of the **Covered Person's Principal Sum**, and will be paid each month the **Covered Person** remains in a **Coma** following the initial thirty-one (31) day period. The **Coma Benefit** will end on the earliest of the following:

1. the **Covered Person** is no longer in a **Coma** which directly resulted from the **Injury**;
2. the **Covered Person** has received a **Coma Benefit** for 100 months.

**Coma** will be determined by **Our** duly licensed physician.

This benefit is subject to the limitations in Section VIII General Limitations.

**IN-HOSPITAL INDEMNITY BENEFIT**

If a **Covered Employee** suffers an **Injury** resulting in a **Covered Loss** that requires him or her to be confined in a **Hospital** for more than five (5) consecutive days, **We** will pay:

1. a monthly benefit of 1% of the **Covered Employee's Principal Sum** to a maximum of $2,500; or
2. for periods of less than one (1) month, one thirtieth of the amount calculated in number 1 above, for each complete day of confinement.

To be eligible for this benefit, the initial **Hospital** confinement must begin within ninety (90) days of the **Injury**.

This benefit will be paid for a maximum of twelve months (12) for any **Covered Injury**.

Successive periods of **Hospital** confinement arising out of the same **Injury** will be considered one confinement only if they are separated by a period of less than three (3) months.

The term **Hospital** means a health care facility that meets all of the following requirements:

1. holds a license as a hospital, if required;
2. operates primarily for the reception, care and treatment of sick, ailing or injured persons as in-patients;
3. provides twenty-four (24) hour a day nursing service by registered nurses;
4. has a staff of one or more licensed physicians available at all times;
5. has facilities for diagnosis, and major medical surgical facilities; and
6. is not primarily a clinic, nursing, rest or convalescent home or similar establishment, nor is not, other than incidentally, a substance abuse center or halfway house.

This benefit is subject to the limitations in Section VIII General Limitations.

## SECTION VI – ADDITIONAL BENEFITS

**ADDITIONAL DISMEMBERMENT BENEFIT FOR CHILDREN**

If the **Insured** selects a **Plan** covering his or her eligible **Dependent Child(ren)**, and a **Covered Dependent Child** suffers an **Injury** resulting in a **Covered Loss**, which is payable under the **Accidental Dismemberment Benefit**, **We** will pay the **Insured** an additional benefit which will be equal to the benefit amount provided by the **Accidental Dismemberment Benefit**.

**AFTER SCHOOL CARE BENEFIT**

If an **Insured** selects a **Plan** covering his or her **Dependents** and the **Insured** or his or her **Covered Spouse/Domestic Partner** suffers an **Injury** resulting in a **Covered Loss** which is payable under the **Accidental Death Benefit**, **We** will reimburse the charges actually incurred for the after school care to the individual who incurs the expense for each **Covered Dependent Child**, who is ten (10) years old or less, up to a maximum of the lesser of:

1. 1% of the applicable **Principal Sum** paid under the **Accidental Death Benefit** per year; or
2. $2,000 per year.

The after school care provider may not be a relative or family member and proof, acceptable to **Us** must be provided to establish eligibility for this benefit.

This benefit will be paid each year for four (4) consecutive years if the **Covered Dependent Child** is under age ten (10) at the time of each payment.

## CARJACKING BENEFIT

If a **Covered Person** suffers an **Injury** resulting in a **Covered Loss**, which is payable under the **Accidental Death** or **Accidental Dismemberment and Covered Loss of Use Benefit**, as a direct result of an **Accident** that occurs during a **Carjacking** of a private passenger automobile that the **Covered Person** was operating, getting into or out of, or riding in as a passenger, **We** will pay an additional benefit equal to 10% of the applicable **Principal Sum** to a maximum of $10,000.

Verification of the **Carjacking** must be made part of an official police report within twenty-four (24) hours of the **Carjacking** or as soon as reasonably possible, or be certified in writing by the investigating officer(s) within twenty-four (24) hours or as soon as reasonably possible, and such verification must be provided to **Us**.

For purposes of this benefit, **Carjacking** means a person other than the **Covered Person** taking unlawful possession of a private passenger automobile by means of force or threats against the person(s) then rightfully occupying it.

## COBRA BENEFIT

If an **Insured** selects a **Plan** covering his or her **Dependents** and the **Insured** suffers an **Injury** resulting in a **Covered Loss**, which is payable under the **Accidental Death Benefit**, and the **Insured** is covered under a medical plan sponsored by the **Policyholder**, **We** will pay an additional benefit to continue medical insurance for the **Insured's** surviving family members for a period of one (1) year. The amount payable under this benefit will be the lesser of:

1. 3% of the **Insured's Principal Sum**;
2. $10,000; or
3. The actual cost to the surviving family members to continue medical coverage for one (1) year under the plan sponsored by the **Policyholder**.

## COMMON DISASTER BENEFIT

If an **Insured** selects a **Plan** covering his or her **Dependents** and the **Insured** and his or her **Covered Spouse/Domestic Partner** are both eligible for **Accidental Death Benefits** as a result of **Covered Injuries** suffered in the same **Accident** and within 90 days of such **Accident**, the **Principal Sum** that would have been payable because of the **Covered Spouse's/Domestic Partner's Accidental Death** will be increased to equal that payable for the loss of the **Insured**, provided:

1. the **Insured** and **Covered Spouse/Domestic Partner** are survived by one or more **Covered Dependent Child(ren)**; and
2. the combined benefits of the **Insured** and the **Covered Spouse/Domestic Partner** are not more than $1,000,000.

## DAY CARE BENEFIT

If an **Insured** selects a **Plan** covering his or her **Dependents** and the **Insured** or his or her **Covered Spouse/Domestic Partner** suffers an **Injury** resulting in a **Covered Loss**, which is payable under the **Accidental Death Benefit**, **We** will pay an additional benefit for day care expenses to the individual who incurs the expense on behalf of each **Covered Dependent Child** if:

1. on the date of the **Accident**, the **Covered Dependent Child** was enrolled in an **Accredited Child Care Facility**, or enrolls in such facility within ninety (90) days from the date of loss; and
2. the **Covered Dependent Child** is under age 13.

The **Day Care Benefit** will be equal to the lesser of:

1. the actual cost of the child care;
2. 5% of the **Principal Sum** of the **Covered Person** who suffered the **Covered Loss**; or
3. $5,000.

If both the **Insured** and his or her **Covered Spouse/Domestic Partner** suffer a simultaneous **Covered Loss** which is payable under the **Accidental Death Benefit**, the **Day Care Benefit** will be based on the **Insured's Principal Sum**.

The **Day Care Benefit** will be paid annually for four (4) consecutive years if:

1. the **Covered Dependent Child** is under age 13 at the time of each annual payment; and
2. proof, acceptable to **Us**, is received by **Us** that verifies that the **Covered Dependent Child** remains enrolled in an **Accredited Child Care Facility**.

An **Accredited Child Care Facility** means:

1. a child care facility that operates pursuant to state and local laws;
2. is licensed by the state for such child care facilities; and
3. has been provided with a Tax Identification Number by the Internal Revenue Service.

An **Accredited Child Care Facility** does not include a hospital; the child's home; a nursing or convalescent home; a facility for the treatment of mental disorders; an orphanage; or a treatment center for drug and alcohol abuse.

**FELONIOUS ASSAULT BENEFIT**

If an **Insured** suffers an **Injury** resulting in a **Covered Loss**, which is payable under the **Accidental Death** or **Accidental Dismemberment and Covered Loss of Use Benefit** as a result of a violent or criminal act committed by someone other than the **Insured**, a **Fellow Employee** or a member of his or her **Family** or **Household**, **We** will pay an additional benefit equal to 25% of the **Insured's Principal Sum**, provided:

1. the **Injury** is incurred in connection with the **Policyholder's** normal business on the **Policyholder's** premises; and
2. the crime directly involves the **Policyholder's** funds or assets.

For purposes of this benefit:

**Fellow Employee** means a person employed by the same employer as the **Insured** or by an employer that is an affiliated or subsidiary corporation. It will also include any person who was so employed, but whose employment was terminated not more than forty-five (45) days prior to the date on which the defined violent crime/felonious assault was committed.

**Family** means the **Insured's** parent, stepparent, **Spouse** or former **Spouse**, son, daughter, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, sister-in-law, aunt, uncle, cousins, grandparent, grandchild or stepchild.

**Household** means a person who maintains residence at the same address as the **Insured**.

This benefit applies only to the crimes or attempted crimes of robbery, theft, hold-up or kidnapping.

**HEARING AID OR PROSTHETIC APPLIANCE BENEFIT**

If a **Covered Person** suffers an **Injury** resulting in a **Covered Loss**, which is payable under the **Accidental Dismemberment and Covered Loss of Use Benefit**, **We** will pay an additional benefit provided:

1. the **Covered Person** is required to use a hearing aid or prosthetic appliance;
2. the **Injury** that caused the payment of the **Accidental Dismemberment and Covered Loss of Use Benefit** is the same **Injury** that requires the **Covered Person** to use the **Hearing Aid or Prosthetic Appliance**; and
3. the **Hearing Aid or Prosthetic Appliance** was required within one (1) year of the **Injury**.

The amount **We** will pay will be equal to the one time cost of the **Hearing Aid or Prosthetic Appliance** actually paid by the **Covered Person**.

This benefit will not be paid unless:

1. the **Hearing Aid or Prosthetic Appliance** was prescribed by a legally qualified physician or surgeon who is not the **Covered Person's** spouse, child, or relative; and
2. presentation of proof of payment is provided to **Us**.

For purposes of this benefit, **Prosthetic Appliance** will include an artificial limb or eye.

No payment will be made for ordinary living, traveling or clothing expenses.

The maximum amount payable under all provisions of this benefit combined will be the lesser of 10% of the **Covered Person's Principal Sum** or $10,000.

**HIGHER EDUCATION BENEFIT**

If the **Insured** selects a **Plan** covering his or her **Dependent Child(ren)** and the **Insured** suffers an **Injury** resulting in a **Covered Loss**, which is payable under the **Accidental Death Benefit**, **We** will pay an additional benefit for higher education expenses to the individual who incurs the expense for each **Covered Dependent Child**.

A **Covered Dependent Child** is eligible for the **Higher Education Benefit** if on the date of the **Accident**:

1. he or she is enrolled as a full-time student in an accredited college, university or trade school; or
2. he or she is at the 12th grade level and enrolls in an accredited college, university or trade school within one (1) year from the date of the **Accident**.

The **Higher Education Benefit** will be equal to 10% of the **Insured's Principal Sum**, to a maximum of $10,000. This amount will be paid annually for four (4) consecutive years if the **Covered Dependent Child** continues his or her education. Before this benefit is paid each year, the **Covered Dependent Child** must present written proof, acceptable to **Us**, that he or she is attending an institution of higher learning on a full-time basis.

## HOME ALTERATION AND VEHICLE MODIFICATION BENEFIT

If a **Covered Person** suffers an **Injury** resulting in a **Covered Loss**, which is payable under the **Accidental Dismemberment and Covered Loss of Use Benefit**, **We** will pay an additional benefit for home alterations and/or vehicle modifications, provided:

1. the **Covered Person** is required to use a wheelchair to be ambulatory on a permanent basis; and
2. the **Injury** that caused the payment of the **Accidental Dismemberment and Covered Loss of Use Benefit** is the same **Injury** that requires the **Covered Person** to need the wheelchair.

The amount **We** will pay will be equal to:

1. the one time cost of alterations to the **Covered Person's** primary residence to make it wheelchair accessible and habitable; and
2. the one time cost of modifications necessary to his or her motor vehicle to make the vehicle accessible or drivable.

Benefits will not be payable unless:

1. alterations and/or modifications are made by a person or persons experienced in such alterations or modifications, and are recommended by a recognized organization providing support and assistance to wheelchair users; and
2. presentation of proof of payment is provided to **Us**.

The maximum amount payable under all provisions of this benefit combined will be the lesser of 10% of the **Covered Person's Principal Sum** or $25,000.

## REHABILITATION BENEFIT

If the **Insured** suffers an **Injury** resulting in a **Covered Loss**, which is payable under the **Accidental Dismemberment and Covered Loss of Use Benefit**, **We** will pay an additional benefit for the **Reasonable and Customary** expenses actually incurred for **Rehabilitation Training**, in an amount equal to the lesser of:

1. the actual expenses that are incurred within two (2) years from the date of the **Accident** for the **Rehabilitation Training**;
2. $10,000; or
3. 10% of the **Insured's Principal Sum**.

**Rehabilitation Training** means a treatment program that:

1. is prescribed by a licensed physician acting within the scope of his or her license that is approved by **Us** prior to the provision of services;
2. is required due to the **Insured's Injury**; and
3. prepares the **Insured** for an occupation that he or she would not have engaged in except for the **Injury**.

**Reasonable and Customary** expenses means the common charges made by other health care providers in the same locality for the treatment furnished. If the common charges for a service cannot be determined due to the unusual nature of such service, **We** will determine the amount based upon:

1. the complexity involved;
2. the degree of professional skill required; and
3. any other pertinent factors.

**We** reserve the right to make the final determination of what is **Reasonable and Customary**.

## SEAT BELT/AIR BAG BENEFIT

If a **Covered Person** suffers an **Injury** resulting in a **Covered Loss**, which is payable under the **Accidental Death Benefit**, and the **Injury** which caused the accidental death directly resulted from an automobile **Accident**, **We** will pay an additional benefit, which equals 10% of the applicable **Principal Sum** up to a maximum of $10,000, provided that the **Covered Person** was:

1. operating or riding as a passenger in any private passenger automobile designed for use primarily on public roads; and
2. wearing an original, equipped, factory installed or manufacturer authorized and unaltered seat belt, or lap and shoulder restraint at the time of the **Injury**.

Verification of the **Covered Person's** actual use of the seat belt or lap and shoulder restraints is required as follows:

1. in the official law enforcement report of the **Accident**, through certification by the investigating officers; or
2. by other reasonable proof, acceptable to **Us**.

An additional benefit equal to 10% of the **Covered Person's Principal Sum** to a maximum of $10,000, will be paid if the **Covered Person** was driving a private passenger automobile with a manufacturer equipped driver-side air bag or riding as a

passenger in a private passenger automobile with a manufacturer equipped passenger-side air bag, provided the **Covered Person's** seat belt or lap and shoulder restraint was properly fastened at the time of the **Accident**. The proper functioning and/or deployment of the air bag must be certified in the official law enforcement report of the **Accident**, through certification by the investigating officers or by other reasonable proof, acceptable to **Us**.

**We** will not pay a **Seat Belt** or **Air Bag Benefit** if the driver of the automobile in which the **Covered Person** was riding was either:

1. under the influence of alcohol;
   a. A driver will be conclusively presumed to be under the influence of alcohol if the level of alcohol in his or her blood exceeds the amount at which a person is presumed, under the law of the locale in which the **Accident** occurred, to be under the influence of alcohol or intoxicating liquor if operating a motor vehicle.
   b. An autopsy report from a licensed medical examiner, law enforcement officer reports, or similar items will be considered proof of the driver's intoxication. Or,
2. under the influence of any prescription drug, narcotic, or hallucinogen, unless such prescription drug, narcotic, or hallucinogen was prescribed by a physician and taken in accordance with the prescribed dosage.

### SPOUSE/DOMESTIC PARTNER RETRAINING BENEFIT

If an **Insured**, selects a **Plan** covering his or her **Spouse/Domestic Partner**, and the **Insured** suffers an **Injury** resulting in a **Covered Loss**, which is payable under the **Accidental Death Benefit**, **We** will pay to his or her **Covered Spouse/Domestic Partner**, the actual cost of any professional or trade-training program in which the **Covered Spouse/Domestic Partner** enrolls, provided:

1. the purpose of the training program is to obtain an independent source of support and maintenance;
2. the actual cost is incurred within thirty (30) months from the death of the **Insured**; and
3. the professional or trade training program is licensed by the state.

The maximum amount payable under this benefit will be the lesser of 3% of the **Insured's Principal Sum** or $10,000.

### SURVIVING SPOUSE/DOMESTIC PARTNER BENEFIT

If an **Insured**, selects a **Plan** covering his or her **Spouse/Domestic Partner** and the **Insured**, suffers an **Injury** resulting in a **Covered Loss**, which is payable under the **Accidental Death Benefit**, **We** will pay an additional benefit to his or her **Covered Spouse/Domestic Partner**. The monthly benefit will be equal to 1% of the **Insured's Principal Sum** and will be paid for a period of six (6) months.

### THERAPEUTIC COUNSELING BENEFIT

If an **Insured** selects a **Plan** covering his or her **Dependents** and the **Insured** or his or her **Covered Dependents** suffers an **Injury** resulting in a **Covered Loss**, which is payable under the **Accidental Death** or **Accidental Dismemberment and Covered and Covered Loss of Use Benefit**, and the **Insured** or his or her **Covered Dependents** requires **Therapeutic Counseling**, **We** will reimburse the charges for such counseling, to the individual who incurs the expense, provided:

1. all terms and conditions of the **Policy** are met;
2. **Therapeutic Counseling** begins within ninety (90) days of the **Covered Accident**;
3. **Therapeutic Counseling** must be received within one (1) year from the date of the **Covered Loss**.

**Therapeutic Counseling** means treatment or counseling provided by a licensed therapist or counselor who is registered or certified to provide psychological treatment or counseling.

The maximum amount payable under this benefit is $1,000 for any one **Covered Accident**.

## SECTION VII – GENERAL EXCLUSIONS

A loss will not be a **Covered Loss** if it is caused by, contributed to, or results from:

1. suicide or any attempt at suicide while sane or intentionally self-inflicted **Injury** or any attempt at intentionally self-inflicted **Injury**;
2. war or any act of war, whether declared or undeclared;
3. involvement in any type of active military;
4. illness or disease, regardless of how contracted; medical or surgical treatment of illness or disease; or complications following the surgical treatment of illness or disease; except for bacterial infections due to **Accidental** ingestion of contaminated foods;

5. participation in the commission or attempted commission of any felony, or an assault;
6. parasailing, bungee jumping, heli-skiing, scuba diving or any other extra-hazardous activity;
7. being intoxicated while operating a motor vehicle.
    a. An **Insured** will be conclusively presumed to be intoxicated if the level of alcohol in his or her blood exceeds the amount at which a person is presumed, under the law of the locale in which the **Accident** occurred, to be intoxicated, if operating a motor vehicle.
    b. An autopsy report from a licensed medical examiner, law enforcement officer reports, or similar items will be considered proof of the **Insured's** intoxication.
8. being under the influence of any prescription drug, narcotic, or hallucinogen, unless such prescription drug, narcotic, or hallucinogen was prescribed by a physician and taken in accordance with the prescribed dosage;
9. travel or flight in any aircraft except to the extent stated in the **Coverage** Section;
10. release, whether or not accidental, or by any person unlawfully or intentionally, of nuclear energy or radiation, including sickness or disease resulting from such release;
11. a cardiovascular event or stroke caused by exertion prior to or at the same time as an **Accident**;
12. alcoholism, drug addiction or the use of any drug or narcotic except as prescribed by a licensed medical provider operating within his or her scope of authority.

## SECTION VIII – GENERAL LIMITATIONS

**Limitation on Multiple Covered Losses.** If a **Covered Person** suffers more than one loss as a result of the same **Accident, We** will pay only one benefit, the largest benefit.

**Limitation on Multiple Benefits.** If a **Covered Person** can recover benefits under more than one of the following benefits: **Accidental Death Benefit, Accidental Dismemberment and Covered Loss of Use Benefit, Coma Benefit, In-Hospital Indemnity Benefit,** as a result of the same **Accident,** the most **We** will pay for these benefits in total is the **Covered Person's Principal Sum.**

**Limitation on Multiple Hazards.** If a **Covered Person** suffers a **Covered Loss** that is covered under more than one **Hazard, We** will pay only one benefit, the largest benefit.

## SECTION IX - TERMINATION OF INSURANCE

A. **Policy Termination.**

   **Termination by Policyholder.** The **Policyholder** may terminate this **Policy** on the first renewal date or at any time after that date by delivering to **Us** a written notice to end this **Policy** at least thirty (30) days in advance of such termination. **We** will calculate and return the unearned premium, if any, using a standard short rate table. The **Policyholder** will send **Us** any additional amounts owed, if any, between the **Policy's** paid to date and the official date of termination.

   **Termination by Us.** **We** may terminate this **Policy** by giving the **Policyholder** at least thirty (30) days notice of **Our** intent to terminate. Such notice will state the exact date the **Policy** will terminate. **We** may also end this **Policy** for non-payment of premium on any premium due date if the payment is not received prior to the end of the **Grace Period**. **We** will mail a notice of such termination to the **Policyholder's** last address shown in **Our** records.

B. **Termination of Individual's Insurance.**

   **Insured.** Insurance terminates at the end of the month for which premium has been paid and during which any of the following occurs:
    1. the **Policy** is terminated;
    2. the **Insured** ceases to be eligible for insurance;
    3. the **Insured** fails to pay the required premium, if the **Insured** is so required;
    4. the **Insured** reaches age 70;
    5. the **Insured** retires.

   **Covered Person** other than the **Insured.** Insurance terminates on the earliest of:
    1. the date the insurance of the **Insured** terminates;
    2. the first premium due date after the person no longer qualifies as a **Covered Person;**
    3. for the **Covered Spouse/Domestic Partner**, the date the **Covered Spouse/Domestic Partner** reaches age 70.

## SECTION X - HOW TO FILE A CLAIM

**A.** **Notice.** The **Insured** or the beneficiary, or someone on their behalf, must give **Us** written notice of the **Covered Loss** within ninety (90) days of such **Covered Loss**. The notice must name the **Covered Person** who sustained the **Injury**, the **Insured**, and the **Policy** Number. To request a claim form, the **Insured** or the beneficiary, or someone on their behalf may contact **Us** at 1-866-841-4771. The notice must be sent to the Claims Department, Zurich American Insurance Company, P.O. Box 968041, Schaumburg, IL 60196-8041, or any of **Our** agents. Notice to **Our** agents is considered notice to **Us**.

**B.** **Claim Forms.** **We** will send the claimant proof of **Covered Loss** forms within fifteen (15) days after **We** receive notice. If the claimant does not receive the proof of **Covered Loss** form in fifteen (15) days after submitting notice, he or she can send **Us** a detailed written report of the claim and the extent of the **Covered Loss**. **We** will accept this report as a proof of **Covered Loss** if sent within the time fixed below for filing a proof of **Covered Loss**.

**C.** **Proof of Covered Loss.** Written proof of **Covered Loss**, acceptable to **Us**, must be sent within ninety (90) days of the **Covered Loss**. Failure to furnish proof of **Covered Loss** acceptable to **Us** within such time will neither invalidate nor reduce any claim if it was not reasonably possible to furnish the proof of **Covered Loss**, and the proof was provided as soon as reasonably possible.

## SECTION XI - PAYMENT OF CLAIMS

**A.** **Time of Payment.** **We** will pay claims for all **Covered Losses**, other than **Covered Losses** for which this **Policy** provides any periodic payment, immediately upon receipt of written proof of loss that is acceptable to **Us**. Unless an optional periodic payment is stated or chosen, any **Covered Loss** to be paid in periodic payments will be paid at the end of each four-week period. The unpaid balance, which remains when **Our** liability ends, will then be paid when **We** receive the proof of **Covered Loss** that is acceptable to **Us**.

**B.** **Who We Will Pay.**

    **1.** Loss of Life of an **Insured**. **Covered Losses** resulting from the **Insured's** death are paid to the named beneficiary at the time of death. If there is no beneficiary named or the named beneficiary predeceases or dies at the same time as the **Insured**, **We** will pay the benefit to the beneficiary named by the **Insured** for the **Policyholder's** Group Life Insurance policy. If there is no beneficiary named by the **Insured** for the **Policyholder's** Group Life Insurance policy, or the named beneficiary predeceases or dies at the same time as the **Insured**, **We** will pay the benefit to the **Insured's** survivors in the following order:

        **a.** the **Insured's** legally married **Spouse** or **Domestic Partner**;

        **b.** the **Insured's** **Child(ren)**;

        **c.** the **Insured's** parents;

        **d.** the **Insured's** brothers and sisters;

        **e.** the **Insured's** estate.

    **2.** Loss of Life of a **Covered Person** other than the **Insured**. **Covered Losses** for the death of a **Covered Person** other than the **Insured** will be paid to the **Insured**. If the **Insured** pre-deceases or dies at the same time as the **Covered Person** other than the **Insured**, the benefit will be paid to the beneficiary unless the beneficiary designation has not been made or the beneficiary is no longer living at the time of death. In such case, the benefits will be paid to the **Insured's** estate.

    **3.** All Other Claims. Benefits are to be paid to the **Covered Person**.

**C.** **Physical Examination and Autopsy.** **We** have the right to examine a **Covered Person** when and as often as **We** may reasonably request while the claim is pending. Such examination will be at **Our** expense. **We** can have an autopsy performed unless forbidden by law.

**D.** **Choice of Service Provider.** The **Covered Person** has the sole right to choose his or her duly licensed physician and hospital.

## SECTION XII - GENERAL POLICY CONDITIONS

**A.** **Beneficiaries.** The **Insured** has the sole right to name a beneficiary. The beneficiary has no interest in the **Policy** other than to receive certain payments. The **Insured** may change the beneficiary at any time unless he or she has assigned the interest in the **Policy**. In such case, the person to whom he or she has assigned the interest in this **Policy** may have the right to change the beneficiary. Consent to a change by a prior beneficiary is not needed unless the previous beneficiary was designated as irrevocable. Any beneficiary designation must be in writing on a form acceptable to **Us**.

B. **Change or Waiver.** A change or waiver of any terms or conditions of this **Policy** must be issued by **Us** in writing and signed by one of **Our** executive officers. No agent has authority to change or waive **Policy** terms or conditions. A failure to exercise any of **Our** rights under this **Policy** will not be deemed as a waiver of such rights in the same or future situations.

C. **Clerical Error.** A clerical error or omission will not increase or continue an **Insured's Coverage**, which otherwise would not be in force. If an **Insured** applies for insurance for which he or she is not eligible, **We** will only be liable for any premiums paid to **Us**.

D. **Conformity with Statute.** Terms of this **Policy** that conflict with the laws of the state where it is delivered are amended to conform to such laws.

E. **Entire Contract.** This **Policy**, the **Policyholder** application, **Insured** enrollment materials, and any attachments represent the entire insurance contract between the **Policyholder** and **Us**.

F. **Grace Period.** Premiums are due for this **Policy** on or before the premium due date or renewal date, whichever applies. If the **Policyholder** does not pay a renewal premium when it is due, there is a thirty-one (31) day **Grace Period** to pay. During the **Grace Period**, the **Policy** will stay in force. The **Policyholder** will not have a **Grace Period** if **We** have given notice, at least thirty (30) days in advance, that **We** are going to terminate this **Policy**.

G. **Insured Certificates.** **We** will give to the **Policyholder** a **Certificate**, in either paper or electronic format, for their **Insureds**, where required by state law. The **Policyholder** will either give or make these **Certificates** available to the **Insureds**. Such **Certificate** will contain a summary of terms that affect benefits.

H. **Policyholder Records.** The **Policyholder** will keep a record of the **Coverage**, premium and other pertinent administrative information for each **Insured**, which, if acceptable to **Us** will be deemed to be a part of the **Policy**. **We** may examine these records at reasonable times while the **Policy** is in force and for six years after the termination of the **Policy**. The **Policyholder** will report to **Us** within a reasonable time all changes in information regarding an **Insured**. The **Policyholder** will indemnify **Us** for any benefits or other payments that are caused in whole or in part by the **Policyholder's** negligence or error in performing the record keeping function.

I. **Suit Against Us.** No action on this **Policy** may be brought until sixty (60) days after written proof of **Covered Loss** has been sent to **Us**. Any action must commence within three (3) years, (five (5) years in Kansas and Tennessee; and six (6) years in South Carolina and Wisconsin) of the date the written proof of **Covered Loss** was required to be submitted. If the law of the state where the **Covered Person** lives makes such limit void, then the action must begin within the shortest time period permitted by law. In those states where binding arbitration is allowed, binding arbitration will supersede this provision.

J. **Renewal.** This **Policy** will automatically renew for an additional twelve-month period unless either party expresses its intent not to renew as specified by **Policy** termination provisions.

K. **ERISA Claims Fiduciary.** The **Policyholder** agrees that the **Policy** constitutes the plan and plan document under the Employee Retirement Income Security Act of 1974 as amended (ERISA). The **Policyholder** designates **Us** as the claims fiduciary of this plan and gives **Us** the discretionary authority to determine eligibility for benefits and to construe the terms of the plan. The **Policyholder** agrees to comply with the disclosure and reporting requirements of ERISA regarding the plan and **Our** designation and authority as the claims fiduciary.

L. **Assignment of Interest.** A transfer of interest is binding when **We** receive written notice on a form acceptable to **Us**. **We** have no duty to confirm that a transfer is valid.

M. **Arbitration.** Any contest to a claim denial under this **Policy** will be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction. The arbitration will occur at the offices of the American Arbitration Association nearest to the **Covered Person**. The arbitrator(s) will not award consequential or punitive damages in any arbitration under this section. This provision does not apply if the **Covered Person** is a resident of a state where the law does not allow binding arbitration in an insurance **Policy**, but only if this **Policy** is subject to its laws. In such a case, binding arbitration does not apply. This provision bars the institution of lawsuit by the **Covered Person**.

N.  **Newly Acquired Corporation** If the **Policyholder** acquires a corporation through stock purchase, exchange of stock or otherwise, and notifies **Us** of such acquisition within ninety (90) days thereafter, the eligible employees of the **Newly Acquired Corporation** will be insured under this **Policy** as of the effective date of such acquisition.

If the **Policyholder** does not notify **Us** and provide **Us** with the underwriting information necessary for **Us** to determine the amount of additional premium required, if any, within the ninety (90) days, or does not pay such additional premium, if any, as required, the **Coverage** for the employees of the **Newly Acquired Corporation** will terminate.   However, the **Policyholder** will be liable for the payment of any premium required for the period such **Coverage** was in effect.

Note:   The above reporting provision only applies to corporations with more than 200 employees.  For corporations with less than 200 employees, reporting of such acquisition will not be required, and **Coverage** will be automatic for the duration of the **Policy** term.

**Edward D. Jones & Co. Employees Health & Welfare Program**
**GTU 4379705**
**Effective: January 1, 2013**

AMENDATORY ENDORSEMENT
**Administrative Change**



**ZURICH**®

ZURICH AMERICAN INSURANCE COMPANY
Schaumburg, Illinois

This endorsement, effective January 1, 2013, forms a part of Policy No. GTU 4379705, issued to Edward D. Jones & Co. Employees Health & Welfare Program.

## AMENDMENTS TO THE POLICY

It is hereby understood and agreed that effective January 1, 2013 the following changes will take place in the Policy:

I.  The following **Covered Losses** are added to the **Covered Loss of Use** schedule of the **Accidental Dismemberment and Covered Loss of Use Benefit** of the Policy **SECTION V – BENEFITS:**

| **Covered Loss of** | **Benefit** |
|---|---|
| 9.   One arm at elbow | 67.5% of **Principal Sum** |
| 10.  One leg below the knee | 60% of **Principal Sum** |

II. The following exclusions are deleted in their entirety from the **Policy SECTION VII – GENERAL EXCLUSIONS:**

6.  parasailing, bungee jumping, heli-skiing, scuba diving or any other extra-hazardous activity;

10. release, whether or not accidental, or by any person unlawfully or intentionally, of nuclear energy or radiation, including sickness or disease resulting from such release;

11. a cardiovascular event or stroke caused by exertion prior to or at the same time as an Accident;

12. alcoholism, drug addiction or the use of any drug or narcotic except as prescribed by a licensed medical provider operating within his or her scope of authority.

Except for the above, this Amendatory Endorsement does not vary, alter, waive, or extend any of the terms of the **Policy** to which it is attached.

Endorsement No. 1

Signed for by Zurich American Insurance Company _____     Date: January 1, 2013

# Civil Union Endorsement



**ZURICH**®

**ZURICH AMERICAN INSURANCE COMPANY**
1400 American Lane
Schaumburg, Illinois 60196

**THIS ENDORSEMENT CHANGES THE POLICY/CERTIFICATE.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the Edward D. Jones & Co. Employees Health & Welfare Program Policy/Certificate.

It is hereby understood and agreed that the following changes are made and incorporated into the Policy/Certificate:

**PURPOSE:**

Illinois law requires that health insurers offer coverage to parties to a civil union that is equivalent to coverage provided to spouses.  This endorsement is part of and amends this policy, contract or certificate to comply with Illinois law.

**DEFINITIONS, TERMS, CONDITIONS AND PROVISIONS:**

The definitions, terms, conditions or any other provisions of the policy, contract, certificate and/or riders and endorsements to which this mandatory endorsement is attached are hereby amended and superseded as follows:

Terms that mean or refer to a civil union or that may be construed to mean or refer to a civil union are "marriage", "spouse", "family", "immediate family", "dependent", "next of kin", and any other such terms that denote a spousal relationship according to Illinois law.

Terms that mean or refer to the dissolution of a marriage, such as "declaration of invalidity", "judgment of dissolution", and any other such terms that include the dissolution of a civil union established according to Illinois law. Dissolution of a civil union shall be governed by the Illinois Marriage and Dissolution of Marriage Act.

**CAUTION:  FEDERAL LAW RIGHTS MAY OR MAY NOT BE AVAILABLE:**

Illinois law grants parties to a civil union the same benefits, protections and responsibilities that flow from marriage under state law.  However, some or all of the benefits, protections and responsibilities related to health insurance that are available to married persons under federal law may not be available to parties to a civil union.  For example, federal law, the Employee Income Retirement Security Act of 1974 known as "ERISA" controls the employer/employee relationship with regard to determining eligibility for enrollment in private employer health benefit plans.  Because of ERISA, Act 91 does not state requirements pertaining to a private employer's enrollment of a party to a civil union in an ERISA employee welfare benefit plan.  However, governmental employers (not federal government) are required to provide health benefits to the dependents of a party to a civil union if the public employer provides health benefits to the dependents of married persons.  Federal law also controls group health insurance continuation rights under "COBRA" for employers with 20 or more employees as well as the Internal Revenue Code treatment of health insurance premiums.  As a result, parties to a civil union and their families may or may not have access to certain benefits under this policy, contract, certificate, rider or endorsement that derive from federal law. You are advised to seek expert advice to determine your rights under this contract.

Except for the above, this endorsement does not vary, alter, waive, or extend any of the terms of the **Policy/Certificate** to which it is attached.

Endorsement No. 2

Effective Date: January 1, 2013  Attached to and forming a part of Policy/Certificate No. GTU 4379705

Signed for Zurich American Insurance Company by: _____     Date: January 1, 2013

Signed for the Policyholder by: _____     Date: _____

U-GU-567-A IL (07/11)     Page 1 of 1



AMENDATORY ENDORSEMENT
**Administrative Change**

ZURICH ᶜᶜ

ZURICH AMERICAN INSURANCE COMPANY
Schaumburg, Illinois

This endorsement, effective <u>January 1, 2015</u> forms a part of **Policy** No. <u>GTU 4379705</u>, issued to <u>Edward D. Jones & Co.</u> <u>Employees Health & Welfare Program.</u>

It is hereby understood and agreed that effective January 1, 2015 the "Employee Only" and "Employee & **Dependents**" rates listed under the "Premium" heading of **SECTION II -- SCHEDULE** of the **Policy** are guaranteed until January 1, 2018.

Except for the above, this Amendatory Endorsement does not vary, alter, waive, or extend any of the terms of the **Policy** to which it is attached.

Endorsement No. <u>3</u>

Signed for by Zurich American Insurance Company ___*Nancy D. Mueller*___                    Date: <u>March 8, 2014</u>

(RK, 3/8/14)

AMENDATORY ENDORSEMENT
**Administrative Change**



**ZURICH AMERICAN INSURANCE COMPANY**
Schaumburg, Illinois

This endorsement, effective January 1, 2015 forms a part of **Policy** No. GTU 4379705, issued to Edward D. Jones & Co. Employees Health & Welfare Program.

It is hereby understood and agreed that effective January 1, 2015 the $10,000 maximum benefit for the **Carjacking Benefit** as it appears in **SECTION VI – ADDITIONAL BENEFITS** of the **Policy** is increased to a maximum benefit of $25,000.

Except for the above, this Amendatory Endorsement does not vary, alter, waive, or extend any of the terms of the **Policy** to which it is attached.

Endorsement No. 4

Signed for by Zurich American Insurance Company _Nancy D. Mueller_        Date: March 27, 2015

(RK, 3/27/15)

AMENDATORY ENDORSEMENT
**Administrative Change**



**ZURICH** ®

ZURICH AMERICAN INSURANCE COMPANY
Schaumburg, Illinois

This endorsement, effective <u>January 1, 2018</u> forms a part of **Policy** No. <u>GTU 4379705,</u> issued to <u>Edward D. Jones & Co,</u> <u>Employees Health & Welfare Program.</u>

It is hereby understood and agreed that effective January 1, 2018 the following changes will take place in the **Policy:**

I.    **Policy** No: GTU 4379705 issued to Edward D. Jones & Co. Employees Health & Welfare Program is hereby renewed beginning with the following date:

      Renewal Date:      January 1, 2018

This **Policy** is renewed subject to the following modifications:

The rates listed under the "Premium" heading of **SECTION II -- SCHEDULE** of the **Policy** are amended as follows:

    Employee Only:             $0.009 per $1,000 of **Principal Sum** per month

    Employee & Dependents:    $0.015 per $1,000 of **Principal Sum** per month

                            These rates is guaranteed until January 1, 2021.

This **Policy** shall automatically renew on the anniversary of the Renewal Date in accordance with the terms of this **Policy.**

II.    The benefits listed for the **After School Benefit** as they appear in **SECTION VI – ADDITIONAL BENEFITS** of the **Policy** are deleted in their entirety and are replaced with the following:

The lesser of:

    **1.**    The actual expenses incurred per year; or

    **2.**    $2,000 per year.

III.    The benefits listed for the **COBRA Benefit** as they appear in **SECTION VI – ADDITIONAL BENEFITS** of the **Policy** are deleted in their entirety and are replaced with the following:

The lesser of:

    **1.**    $10,000; or

    **2.**    The actual cost to the surviving family members to continue medical coverage for one (1) year under the plan sponsored by the **Policyholder.**

IV.    The benefits listed for the **Day Care Benefit** as they appear in **SECTION VI – ADDITIONAL BENEFITS** of the **Policy** are deleted in their entirety and are replaced with the following:

The **Day Care Benefit** will be equal to the lesser of:

    **1.**    the actual cost of the child care;

    **2.**    $5,000.

V.      The paragraph describing the benefits for the **Hearing Aid or Prosthetic Appliance Benefit** as it appears in **SECTION VI – ADDITIONAL BENEFITS** of the **Policy** is deleted in its entirety and is replaced with the following:

         The maximum amount payable under all provisions of this benefit combined will be the lesser of the actual cost of the hearing aid or prosthetic appliance or $10,000.

VI.     The paragraph describing the benefits for the **Higher Education Benefit** as it appears in **SECTION VI – ADDITIONAL BENEFITS** of the **Policy** is deleted in its entirety and is replaced with the following:

         The **Higher Education Benefit** will be equal to the actual cost of the higher education to a maximum of $10,000. This amount will be paid annually for four (4) consecutive years if the **Covered Dependent Child** continues his or her education. Before this benefit is paid each year, the **Covered Dependent Child** must present written proof, acceptable to **Us**, that he or she is attending an institution of higher learning on a full-time basis.

VII.    The paragraph describing the benefits for the **Home Alteration and Vehicle Modification Benefit** as it appears in **SECTION VI – ADDITIONAL BENEFITS** of the **Policy** is deleted in its entirety and is replaced with the following:

         The maximum amount payable under all provisions of this benefit combined will be the lesser of the actual cost of the home alteration or vehicle modification or $25,000.

VIII.   The benefits listed for the **Rehabilitation Benefit** as they appear in **SECTION VI – ADDITIONAL BENEFITS** of the **Policy** are deleted in their entirety and are replaced with the following:

         The lesser of:

         1.  the actual expenses that are incurred within two (2) years from the date of the **Accident** for the **Rehabilitation Training**; or

         2.  $10,000.

IX.     The paragraph describing the benefits for the **Spouse/Domestic Partner Retraining Benefit** as it appears in **SECTION VI – ADDITIONAL BENEFITS** of the **Policy** is deleted in its entirety and is replaced with the following:

         The maximum amount payable under this benefit will be the lesser of the actual cost of professional or trade training or $10,000.

Except for the above, this Amendatory Endorsement does not vary, alter, waive, or extend any of the terms of the **Policy** to which it is attached.

Endorsement No. _5_

Signed for by Zurich American Insurance Company _____      Date: _October 24, 2017_

(RK, 10/24/17)

AMENDATORY ENDORSEMENT
**Administrative Change**



ZURICH AMERICAN INSURANCE COMPANY
Schaumburg, Illinois

This endorsement, effective <u>January 1, 2019</u> forms a part of **Policy** No. <u>GTU 4379705</u>, issued to <u>Edward D. Jones & Co.</u>
<u>Employees Health & Welfare Program.</u>

It is hereby understood and agreed that effective January 1, 2019 the following changes will take place in the **Policy:**

I.   **Policy** No: GTU 4379705 issued to Edward D. Jones & Co. Employees Health & Welfare Program is hereby renewed
     beginning with the following date:

     Renewal Date:     January 1, 2019

    This **Policy** shall automatically renew on the anniversary of the Renewal Date in accordance with the terms of this
    **Policy.**

II.  The definition of a **Class II** eligible as it appears in **SECTION I – ELIGIBILITY AND EFFECTIVE DATES OF
     INSURANCE** of the **Policy** is amended as follows:

     **Class II:**    All **Active** full-time Financial Advisors, Service Partners, and General Partners of the **Policyholder**.
              Full-time status shall be defined in the **Policyholder's Plan**.  Currently full-time status is defined as
              working 35 hours per week or more.

III. The definition of **Base Annual Pay** as it appears under the **Benefits** heading in **SECTION II – SCHEDULE** of the
     **Policy** is amended as follows:

    **Base Annual Pay** means the employees' base annual salary including bonuses (excluding Limited Partner
    distributions and commissions).  If the employee has less than one year of service, the employee's rate of basic
    annual pay is an amount equal to 12 times his or her monthly pay.  Basic annual pay is calculated as of December
    31, with the resulting amount used during the following calendar year as the basis for computing the employee's
    Life and Accidental Death & Dismemberment Insurance benefits.  References to employees in this **Policy** also refer
    to General Partners and Service Partners.

Except for the above, this Amendatory Endorsement does not vary, alter, waive, or extend any of the terms of the **Policy** to which
it is attached.

Endorsement No. <u>6</u>

Signed for by Zurich American Insurance Company    *Mark G. Kampfer*       Date: <u>January 4, 2019</u>

(RK, 1/4/19)

NOTICE OF PROTECTION PROVIDED BY MISSOURI
LIFE AND HEALTH INSURANCE GUARANTY
ASSOCIATION

This notice provides a *brief summary* of the Missouri Life and Health Insurance Guaranty Association ("the Association") and the protection it provides for policyholders. This safety net was created under Missouri law, which determines who and what is covered and the amounts of coverage.

The Association was established to provide protection in the unlikely event that your life, annuity, or health insurance company becomes financially unable to meet its obligations and is taken over by its insurance department. If this should happen, the Association will typically arrange to continue coverage and pay claims, in accordance with Missouri law, with funding from assessments paid by other insurance companies.

The basic protections provided by the Association are as follows:

- Life Insurance
  - $300,000 in death benefits
  - $100,000 in cash surrender or withdrawal values
- Health Insurance
  - $500,000 in hospital, medical and surgical insurance benefits
  - $300,000 in disability insurance benefits
  - $300,000 in long-term care insurance benefits
  - $100,000 in other types of health insurance benefits
- Annuities
  - $250,000 in withdrawal and cash values

The maximum amount of protection for each individual, regardless of the number of policies or contracts, is as follows:

- $300,000 in aggregate for all types of coverage listed above, with the exception of basic hospital, medical, and surgical insurance or major medical insurance

- $500,000 in aggregate for basic hospital, medical, and surgical insurance or major medical insurance

- $5,000,000 to one policy owner of multiple nongroup policies of life insurance, whether the policy owner is an individual, firm, corporation, or other person, and whether the persons insured are officers, managers, employees, or other persons

*Note: Certain policies and contracts may not be covered or fully covered.* For example, coverage does not extend to any portion(s) of a policy or contract that the insurer does not guarantee, such as certain investment additions to the account value of a variable life insurance policy or a variable annuity contract. There are also various residency requirements and other limitations under Missouri law.

To learn more about the above protections, as well as protections relating to group contracts or retirement plans, please visit the Association's website at www.mo-iga.org, or contact:

Missouri Life and Health Insurance
Guaranty Association
994 Diamond Ridge, Suite 102
Jefferson City, Missouri 65109
Ph.: 573-634-8455
Fax: 573-634-8488

Missouri Department of Insurance,
Financial Institutions and Professional Registration
301 West High Street, Room 530
Jefferson City, Missouri 65101
Ph.: 573-522-6115

Insurance companies and agents are not allowed by Missouri law to use the existence of the Association or its coverage to encourage you to purchase any form of insurance. When selecting an insurance company, you should not rely on Association coverage. If there is any inconsistency between this notice and Missouri law, then Missouri law will control.

# SANCTIONS EXCLUSION ENDORSEMENT



**ZURICH**®

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

The following exclusion is added to the policy to which it is attached and supersedes any existing sanctions language in the policy, whether included in an Exclusion Section or otherwise:

SANCTIONS EXCLUSION

Notwithstanding any other terms under this policy, we shall not provide coverage nor will we make any payments or provide any service or benefit to any insured, beneficiary, or third party who may have any rights under this policy to the extent that such coverage, payment, service, benefit, or any business or activity of the insured would violate any applicable trade or economic sanctions law or regulation.

The term policy may be comprised of common policy terms and conditions, the declarations, notices, schedule, coverage parts, insuring agreement, application, enrollment form, and endorsements or riders, if any, for each coverage provided. Policy may also be referred to as contract or agreement.

We may be referred to as insurer, underwriter, we, us, and our, or as otherwise defined in the policy, and shall mean the company providing the coverage.

Insured may be referred to as policyholder, named insured, covered person, additional insured or claimant, or as otherwise defined in the policy, and shall mean the party, person or entity having defined rights under the policy.

These definitions may be found in various parts of the policy and any applicable riders or endorsements.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

Filed: 7/26/2022 8:40 AM
Clerk
Allen County, Indiana
BB

Allen Superior Court 8



**Group Accident Policy**

ZURICH®

ZURICH AMERICAN INSURANCE COMPANY
Schaumburg, Illinois

In return for the payment of premium expressed in the **Schedule**, **We** agree to pay the benefits of this Group **Accident Policy** to the persons insured hereunder, subject to the terms and conditions, which follow. **We** have issued the Group **Accident Policy** to the **Policyholder**. The Group **Accident Policy** is executed as of the **Policy** date which is its date of issue, and from which anniversary dates are measured. The Group **Accident Policy** is delivered in, and subject to the laws of the Contract Situs in which it is issued.

### THIS GROUP ACCIDENT INSURANCE POLICY PROVIDES ACCIDENT COVERAGE ONLY
### THIS POLICY DOES NOT PROVIDE COVERAGE FOR SICKNESS

POLICYHOLDER:   Edward D. Jones & Co. Employees Health & Welfare Program
12555 Manchester Road
St. Louis, MO 63131

POLICY NUMBER:   GTU 4379707

POLICY DATE:   January 1, 2013 to Continuous
(All Insurance begins and ends at 12:01 a.m. at **Policyholder's** Address)

CONTRACT SITUS:   Missouri

The following pages, including any riders, endorsements, schedule pages, **Insured** enrollment forms, applications or amendments, are a part of this Group **Accident Policy**. **We** and the **Policyholder** have agreed to all the terms of this Group **Accident Policy**.

This is a legal contract between the **Policyholder** and **Us**.
READ THE GROUP **ACCIDENT POLICY** CAREFULLY

In Witness Whereof, **We** have caused this **Policy** to be executed and attested, and, if required by state law, this **Policy** will not be valid unless countersigned by **Our** authorized representative.

*Nancy D. Mueller*

Nancy D. Mueller
President
Zurich American Insurance Company

*Dennis F. Kerrigan Jr.*

Dennis F. Kerrigan, Jr.
Corporate Secretary
Zurich American Insurance Company

### NON-PARTICIPATING

EXHIBIT
B
tabbies

# TABLE OF CONTENTS

| Section I | ELIGIBILITY AND<br>EFFECTIVE DATES OF INSURANCE |
|---|---|
| Section II | SCHEDULE |
| Section III | DEFINITIONS |
| Section IV | **COVERAGES** |
| Section V | BENEFITS |
| Section VI | ADDITIONAL BENEFITS |
| Section VII | GENERAL EXCLUSIONS |
| Section VIII | GENERAL LIMITATIONS |
| Section IX | TERMINATION OF INSURANCE |
| Section X | HOW TO FILE A CLAIM |
| Section XI | PAYMENT OF CLAIMS |
| Section XII | GENERAL **POLICY** CONDITIONS |

## SECTION I – ELIGIBILITY AND EFFECTIVE DATES OF INSURANCE

**ELIGIBILITY AND CLASSIFICATION OF INSUREDS:**

The following individuals are eligible to become **Insureds** upon completion of the **Service Waiting Period** as indicated below, and the submission of completed enrollment material, if required:

**Class I:** All **Active** full-time Branch Office Administrators, Home Office Associates, and Transitional Representatives of the **Policyholder**. Full-time status shall be defined in the **Policyholder's** Plan. Currently full-time status is defined as working 35 hours per week or more.

**Class II:** All **Active** full-time Financial Advisors and General Partners of the **Policyholder**. Full-time status shall be defined in the **Policyholder's** Plan. Currently full-time status is defined as working 35 hours per week or more.

**Base Annual Pay** means the employees' base annual salary including bonuses (excluding Limited Partner Bonus) and commissions. If the employee has less than one year of service, the employee's rate of basic annual pay is an amount equal to 12 times his or her monthly pay. Basic annual pay is calculated as of December 31, with the resulting amount used during the following calendar year as the basis for computing the employee's Life and Accidental Death & Dismemberment Insurance benefits.

If an **Insured** suffers an **Injury** resulting in a **Covered Loss,** and he or she is covered under more than one class, **We** will pay only one benefit, the largest benefit.

**SERVICE WAITING PERIOD:**

60 days of **Active** continuous service.

**EFFECTIVE DATE OF INSURANCE FOR THE INSURE**

A. For eligible individuals hired prior to January 1, 2013:
January 1, 2013, provided the completed enrollment material is received by the **Policyholder** on or prior thereto.

B. For eligible individuals hired on or after January 1, 2013:
on the first day of the month following completion of the required **Service Waiting Period** indicated above, provided the completed enrollment material is received by the **Policyholder** prior thereto.

## SECTION II – SCHEDULE

| COVERAGE(S): | Classes Covered |
|---|---|
| 24 Hour **Accident** Protection, Business and Pleasure, Excluding Corporate Owned or Leased Aircraft, H-1 | All |
| Exposure and Disappearance Coverage | All |

| BENEFITS: | Classes Covered |
|---|---|
| **Accidental Death Benefit** | All |

**Principal Sum:**

**Class I:** Two (2) times the employee's **Base Annual Pay** rounded to the next higher $1,000 if not already a multiple thereof, from a minimum of $50,000 to a maximum of $100,000.

**Class II:** $100,000

| | Classes Covered |
|---|---|
| **Accidental Dismemberment and Covered Loss of Use Benefit** | All |

**Principal Sum:**

Same as above.

| Coma Benefit | All |
|---|---|

**ADDITIONAL BENEFITS:**                                          Classes Covered

| | |
|---|---|
| Carjacking Benefit | All |
| Home Alteration and Vehicle Modification Benefit | All |
| Rehabilitation Benefit | All |
| Seat Belt/Air Bag Benefit | All |
| Therapeutic Counseling Benefit | All |
| Travel Assistance Plan | All |

| **ADDITIONAL ENDORSEMENTS** | **Form Number** | **Classes Covered** |
|---|---|---|
| Amendments to the **Policy** | U-VA-104-A (MO) (09/06) | All |
| Civil Union Endorsement | U-GU-567-A IL (07/11) | All |

| | |
|---|---|
| Enrollment Required: | ☐ Yes    ☑ No |
| Premium Due Date: | First day of each month |
| Premium: | $0.0075 per $1,000 of **Principal Sum** per month |
| | Theis rate is guaranteed until January 1, 2015 |

## SECTION III – DEFINITIONS

**Accident** or **Accidental** means a sudden, unexpected, specific and abrupt event that occurs by chance at an identifiable time and place during the **Policy** term.

**Active** and **Actively at Work** describes an employee who is able and available for active performance of all of his or her regular duties. Short term absence because of a regularly scheduled day off, holiday, vacation day, jury duty, funeral leave, or personal time off is considered **Actively at Work** provided the employee is able and available for active performance of all of his or her regular duties and was working the day immediately prior to the date of his or her absence.

**Aggregate Limit of Liability** means the total benefits **We** will pay for a **Covered Accident** or **Covered Accidents** set forth in the Schedule. For purposes of the **Aggregate Limit of Liability** provision, **Covered Accident** or **Covered Accidents** will include a **Covered Loss** or **Covered Losses** arising out of a single event or related events or originating cause and includes a resulting **Covered Loss** or **Covered Losses**. If the total benefits under the **Aggregate Limit of Liability** is not enough to pay full benefits to each **Covered Person**, **We** will pay each one a reduced benefit based upon the proportion that the **Aggregate Limit of Liability** bears to the total benefits which would otherwise be paid.

**Chartered Aircraft** means an aircraft operated by a company with an air carrier or commercial operating certificate issued by the Federal Aviation Administration or the equivalent certificate issued by a foreign government, which the **Policyholder** has the right to use for no more than ten (10) consecutive days and/or for no more than twenty five (25) days in a one (1) year period.

**Controlled** by, as used in the **Coverages** Section, means the **Policyholder** has the right to use a block of aircraft flight time for 25 or more hours in a one (1) year period or for 100 hours or more without a specified term, from a company which is in the business of providing aircraft for private use. A **Chartered Aircraft** will not be considered **Controlled** by the **Policyholder**.

**Coverage(s)** means the event or events described in the **Hazards** of this **Policy** to which benefits and additional benefits apply. The **Hazards** are listed in the **Coverages** Section on the Schedule.

**Covered Accident** means an **Accident** that results in a **Covered Loss**.

**Covered Injury** means an **Injury** directly caused by means which is independent of all other causes, results from a **Covered Accident**, occurs while the **Covered Person** is insured under this **Policy**, and results in a **Covered Loss**.

**Covered Loss** means a loss which meets the requisites of one or more benefits or additional benefits, results from a **Covered Injury**, and for which benefits are payable under this **Policy**.

**Covered Person** means any person who has insurance under the terms of this **Policy**. It includes the **Insured**.

**Dependent** means an **Insured's Spouse/Domestic Partner** and **Dependent Child(ren)**, as defined in this section.

**Dependent Child(ren)**, if used in this **Policy**, means those unmarried **Child(ren)** of the **Insured** who rely on the **Insured** for more than 50% of their support, and are either: 1) less than 19 (nineteen) years of age; 2) less than 26 (twenty-six) years of age and enrolled on a full-time basis in a college, university, or trade school, or who satisfy neither 1) nor 2), but who prior to his or her termination of coverage became incapable of self-sustaining employment by reason of mental retardation or physical handicap.

**Domestic Partner** means as defined in the **Policyholder's** medical plan as on file and approved by **Us**.

**Injury** means a bodily **Injury**.

**Insured** means an individual who is eligible for **Coverage** under this **Policy** as provided in the Eligibility and Classification of **Insureds** part of Section I, and who completes the enrollment material, if required.

**Owned Aircraft** means an aircraft in which the **Policyholder** or a related company has legal or equitable title. Fractional ownership in a company which is in the business of providing aircraft for private use will be deemed to be equitable title in the aircraft used by the **Policyholder**.

**Plan** means the **Plan** design as described on the Schedule.

**Policy** means this Group **Accident** Insurance **Policy**.

**Policyholder** means the group named on the front page of this **Policy**.

**Specialized Aviation Activity** means an aircraft while it is being used for one or more of the following activities:

| | |
|---|---|
| acrobatic or stunt flying | hang gliding |
| aerial photography | hunting |
| banner towing | parachuting or skydiving |
| bird or fowl herding | pipe line inspection |
| crop dusting | power line inspection |
| crop seeding | racing |
| crop spraying | skywriting |
| endurance tests | test or experimental purpose |
| exploration | |
| fire fighting | |

flight on a rocket-propelled or rocket launched aircraft

flight which requires a special permit or waiver from the authority having jurisdiction over civil aviation, even though granted

**Spouse**, if used in this **Policy**, means the **Insured's** legally married **Spouse**.

**Under lease**, as used in the Coverages Section, means an aircraft which the **Policyholder** does not own but has the right to use, under a written agreement, for more than ten (10) consecutive days and/or for more than fifteen (15) days in a one (1) year period. A **Chartered Aircraft** will not be considered **Under lease**.

**We**, **Us**, and **Our** refers to Zurich American Insurance Company.

## SECTION IV – COVERAGES

### 24 HOUR ACCIDENT PROTECTION, BUSINESS AND PLEASURE EXCLUDING CORPORATE OWNED OR LEASED AIRCRAFT, H-1

The **Hazards** insured against by this **Policy** are:

A Covered **Injury** sustained by an **Insured** anywhere in the world, subject to the terms, conditions, exclusions and limitations under this **Policy**.

**Hazard Limitations:**

Air travel **Coverage** is limited to a loss sustained during a trip, while the **Insured** is a passenger, riding in or on, boarding or getting off:

A. any civilian aircraft with a current and valid normal, transport, or commuter type standard airworthiness certificate as defined by the Federal Aviation Administration or its successor or an equivalent certification from a foreign government. This aircraft must be operated by a pilot with a current and valid:

    1. medical certificate; and

    2.  pilot certificate with a proper rating to pilot such aircraft.

**B.**  any aircraft which is not subject to a certificate of airworthiness; whose design and customary and regular purpose is for transporting passengers; and which is operated by the Armed Forces of the United States of America or the Armed Forces of any foreign government.

**Hazard Exclusions:**

  **Coverage** is not provided:

**A.**  If the **Insured** is the pilot, operator, member of the crew or cabin attendant of any aircraft.

**B.**  Unless **We** have previously consented in writing to the use, **Coverage** is not provided for any loss, caused by, contributed to, resulting from riding in or on, boarding, or getting off:

    **1.**  any aircraft other than those expressly stated in this **Coverage**;

    **2.**  any aircraft **Owned or Controlled by**, or **Under lease** to the **Policyholder**;

    **3.**  any aircraft **Owned or Controlled by**, or **Under lease** to an **Insured** or member of an **Insured's** family or household;

    **4.**  any aircraft operated by the **Policyholder** or one of the **Policyholder's** employees including members of an employee's family or household;

    **5.**  any aircraft engaged in a **Specialized Aviation Activity**;

    **6.**  any conveyance used for tests or experimental purposes, or in a race or speed test.

Other Limitations and Exclusions that apply to this **Hazard** are in Section VII General Exclusions and Section VIII General Limitations.

### EXPOSURE AND DISAPPEARANCE COVERAGE

If an **Insured** is exposed to weather because of an **Accident** and this results in a **Covered Loss**, **We** will pay the applicable **Principal Sum**, subject to all **Policy** terms.

If the conveyance in which an **Insured** is riding disappears, is wrecked, or sinks, and the **Insured** is not found within 365 days of the event, **We** will presume that the person lost his or her life as a result of **Injury**. If travel in such conveyance was covered under the terms of this **Policy**, **We** will pay the applicable **Principal Sum**, subject to all **Policy** terms. **We** have the right to recover the benefit if **We** find that the **Insured** survived the event.

Limitations and Exclusions that apply to this **Hazard** are in Section VII General Exclusions and Section VIII General Limitations.

**SECTION V – BENEFITS**

### ACCIDENTAL DEATH BENEFIT

If an **Insured** suffers a loss of life as a result of a **Covered Injury**, **We** will pay the applicable **Principal Sum**. The death must occur within 365 days of the **Covered Injury**.

This benefit is subject to the limitations in Section VIII General Limitations.

### ACCIDENTAL DISMEMBERMENT AND COVERED LOSS OF USE BENEFIT

If an **Injury** to an **Insured** results in any of the following **Covered Losses**, **We** will pay the benefit amount shown. The **Covered Loss** must occur within 365 days of the **Accident**.

The benefit amounts are based on the **Insured's Principal Sum**.

| | Covered Loss of | Benefit |
|---|---|---|
| **1.** | Both Hands or Both Feet | **Principal Sum** |
| **2.** | One Hand and One Foot | **Principal Sum** |
| **3.** | One Hand or One Foot plus the loss of Sight of One Eye | **Principal Sum** |
| **4.** | Sight of Both Eyes | **Principal Sum** |
| **5.** | Speech and Hearing | **Principal Sum** |
| **6.** | Speech or Hearing | 50% of **Principal Sum** |
| **7.** | One Hand; One Foot; or Sight of One Eye | 50% of **Principal Sum** |
| **8.** | Thumb and Index Finger of the same Hand | 25% of **Principal Sum** |

**Covered Loss of Use of**

| | | |
|---|---|---|
| 1. | Four Limbs | **Principal Sum** |
| 2. | Three Limbs | 75% of **Principal Sum** |
| 3. | Two Limbs | 66 2/3% of **Principal Sum** |
| 4. | One Limb | 50% of **Principal Sum** |

For purposes of this benefit:

1. **Covered Loss** means, as applicable:
   a. For a foot or hand, actual severance through or above an ankle or wrist joint;
   b. Actual severance through or above the metacarpophalangeal joint of a thumb or index finger;
   c. Total and permanent loss of sight;
   d. Total and permanent loss of speech;
   e. Total and permanent loss of hearing.
2. **Covered Loss of Use** means total paralysis of a **Limb** or **Limbs**, which is determined by **Our** competent medical authority to be permanent, complete and irreversible.  **Limb** means an arm or a leg.

This benefit is subject to the limitations in Section VIII General Limitations.

## COMA BENEFIT

If an **Insured** suffers an **Injury** resulting in a **Covered Loss** within 365 days of a **Covered Accident**, and such **Injury** causes the **Insured** to be in a **Coma** for at least thirty-one (31) consecutive days, **We** will pay a **Coma Benefit**.

The **Coma Benefit** is equal to 1% of the **Insured's Principal Sum**, and will be paid each month the **Insured** remains in a **Coma** following the initial thirty-one (31) day period.  The **Coma Benefit** will end on the earliest of the following:

1. the **Insured** is no longer in a **Coma** which directly resulted from the **Injury**;
2. the **Insured** has received a **Coma Benefit** for 100 months.

**Coma** will be determined by **Our** duly licensed physician.

This benefit is subject to the limitations in Section VIII General Limitations.

## SECTION VI – ADDITIONAL BENEFITS

### CARJACKING BENEFIT

If an **Insured** suffers an **Injury** resulting in a **Covered Loss**, which is payable under the **Accidental Death** or **Accidental Dismemberment and Covered Loss of Use Benefit**, as a direct result of an **Accident** that occurs during a **Carjacking** of a private passenger automobile that the **Insured** was operating, getting into or out of, or riding in as a passenger, **We** will pay an additional benefit equal to 10% of the **Insured's Principal Sum** to a maximum of $25,000.

Verification of the **Carjacking** must be made part of an official police report within twenty-four (24) hours of the **Carjacking** or as soon as reasonably possible, or be certified in writing by the investigating officer(s) within twenty-four (24) hours or as soon as reasonably possible, and such verification must be provided to **Us**.

For purposes of this benefit, **Carjacking** means a person other than the **Insured** taking unlawful possession of a private passenger automobile by means of force or threats against the person(s) then rightfully occupying it.

### HOME ALTERATION AND VEHICLE MODIFICATION BENEFIT

If an **Insured** suffers an **Injury** resulting in a **Covered Loss**, which is payable under the **Accidental Dismemberment and Covered Loss of Use Benefit**, **We** will pay an additional benefit for home alterations and/or vehicle modifications, provided:

1. the **Insured** is required to use a wheelchair to be ambulatory on a permanent basis; and
2. the **Injury** that caused the payment of the **Accidental Dismemberment and Covered Loss of Use Benefit** is the same **Injury** that requires the **Insured** to need the wheelchair.

The amount **We** will pay will be equal to:

1. the one time cost of alterations to the **Insured's** primary residence to make it wheelchair accessible and habitable; and
2. the one time cost of modifications necessary to his or her motor vehicle to make the vehicle accessible or drivable.

Benefits will not be payable unless:

1. alterations and/or modifications are made by a person or persons experienced in such alterations and/or modifications, and are recommended by a recognized organization providing support and assistance to wheelchair users; and
2. presentation of proof of payment is provided to **Us**.

The maximum amount payable under all provisions of this benefit combined will be the lesser of 10% of the **Insured's Principal Sum** or $25,000.

## REHABILITATION BENEFIT

If the **Insured** suffers an **Injury** resulting in a **Covered Loss**, which is payable under the **Accidental Dismemberment and Covered Loss of Use Benefit**, **We** will pay an additional benefit for the **Reasonable and Customary** expenses actually incurred for **Rehabilitation Training**, in an amount equal to the lesser of:

1. the actual expenses that are incurred within two (2) years from the date of the **Accident** for the **Rehabilitation Training**;
2. $10,000; or
3. 10% of the **Insured's Principal Sum**.

**Rehabilitation Training** means a treatment program that:

1. is prescribed by a licensed physician acting within the scope of his or her license that is approved by **Us** prior to the provision of services;
2. is required due to the **Insured's Injury**; and
3. prepares the **Insured** for an occupation that he or she would not have engaged in except for the **Injury**.

**Reasonable and Customary** expenses means the common charges made by other health care providers in the same locality for the treatment furnished. If the common charges for a service cannot be determined due to the unusual nature of such service, **We** will determine the amount based upon:

1. the complexity involved;
2. the degree of professional skill required; and
3. any other pertinent factors.

We reserve the right to make the final determination of what is **Reasonable and Customary**.

## SEAT BELT/AIR BAG BENEFIT

If an **Insured** suffers an **Injury** resulting in a **Covered Loss**, which is payable under the **Accidental Death Benefit**, and the **Injury** which caused the accidental death directly resulted from an automobile **Accident**, **We** will pay an additional benefit, which equals 10% of the **Insured's Principal Sum** up to a maximum of $25,000, provided that the **Insured** was:

1. operating or riding as a passenger in any private passenger automobile designed for use primarily on public roads; and
2. wearing an original, equipped, factory installed or manufacturer authorized and unaltered seat belt, or lap and shoulder restraint at the time of the **Injury**.

Verification of the **Insured's** actual use of the seat belt or lap and shoulder restraints is required as follows:

1. in the official law enforcement report of the **Accident**, through certification by the investigating officers; or
2. by other reasonable proof, acceptable to **Us**.

An additional benefit equal to 10% of the **Insured's Principal Sum** to a maximum of $25,000, will be paid if the **Insured** was driving a private passenger automobile with a manufacturer equipped driver-side air bag or riding as a passenger in a private passenger automobile with a manufacturer equipped passenger-side air bag, provided the **Insured's** seat belt or lap and shoulder restraint was properly fastened at the time of the **Accident**. The proper functioning and/or deployment of the air bag must be certified in the official law enforcement report of the **Accident**, through certification by the investigating officers or by other reasonable proof, acceptable to **Us**.

We will not pay a **Seat Belt or Air Bag Benefit** if the driver of the automobile in which the **Insured** was riding was either:

1. under the influence of alcohol;
   a. A driver will be conclusively presumed to be under the influence of alcohol if the level of alcohol in his or her blood exceeds the amount at which a person is presumed, under the law of the locale in which the **Accident** occurred, to be under the influence of alcohol or intoxicating liquor if operating a motor vehicle.
   b. An autopsy report from a licensed medical examiner, law enforcement officer reports, or similar items will be considered proof of the driver's intoxication. Or,

2.  under the influence of any prescription drug, narcotic, or hallucinogen, unless such prescription drug, narcotic, or hallucinogen was prescribed by a physician and taken in accordance with the prescribed dosage.

## THERAPEUTIC COUNSELING BENEFIT

If an **Insured** suffers an **Injury** resulting in a **Covered Loss**, which is payable under the **Accidental Dismemberment and Covered Loss of Use Benefit**, and the **Insured** requires **Therapeutic Counseling**, **We** will reimburse the charges for such counseling, provided:

1.  all terms and conditions of the **Policy** are met;
2.  **Therapeutic Counseling** begins within ninety (90) days of the **Covered Accident**;
3.  **Therapeutic Counseling** must be received within one (1) year from the date of the **Covered Loss**.

**Therapeutic Counseling** means treatment or counseling provided by a licensed therapist or counselor who is registered or certified to provide psychological treatment or counseling.

The maximum amount payable under this benefit is $1,000 for any one **Covered Accident**.

## TRAVEL ASSISTANCE PLAN

This **Travel Assistance Plan** will apply to the following **Covered Persons** when they are traveling 100 miles or more from their **Principal Residence**: the Insured and his or her **Spouse/Domestic Partner** and/or **Child(ren)** if the **Spouse/Domestic Partner** and/or **Child(ren)** are with the **Insured** while he or she is covered under this **Policy**. The **Spouse/Domestic Partner** and/or **Child(ren)** will not be covered while making a trip without the **Insured**. The transportation and/or services provided under this **Travel Assistance Plan** must be pre-authorized by **Us**. Under this **Policy**, the **Travel Assistance Plan** consists of the following:

- **TRAVEL ASSISTANCE BENEFITS**

    **Medical Evacuation**

    If a **Covered Person** is **Injured** or **Ill** on a **Covered Trip** and is being treated in a hospital, medical facility, clinic or by a medical provider which, based upon **Our** evaluation, cannot provide medical care in accordance with **Western Medical Standards**, **We** will arrange for, and cover the cost for, the transport of the **Covered Person** to the nearest hospital or medical facility which can provide such care. **We** must be contacted prior to the transport and **We** must pre-authorize the transport for benefits to be payable. No transport will be arranged for and/or covered without the prior recommendation of the attending physician.

    For the limited purpose of determining **Our** liability, **We** have the sole right to determine the standard of care of a hospital or medical facility, clinic or medical provider.

    **Medical Repatriation**

    If a **Covered Person** is **Injured** or **Ill** on a **Covered Trip** and has sufficiently recovered to travel in a non-scheduled commercial air flight or a regularly scheduled air flight with special equipment and/or personnel with minimal risk to his or her health, **We** will arrange for, and cover the cost for, the transport of the **Covered Person** to his or her **Principal Residence**, or to his or her residence in the country where he or she is currently assigned (at his or her option), in such transportation. **We** must be contacted prior to the transport and **We** must pre-authorize the transport for benefits to be payable. No transport will be arranged for and/or covered without the prior recommendation of the attending physician. For the limited purpose of determining **Our** liability, **We** have the sole right to determine the scheduling, the mode of transportation and the special equipment and/or personnel which are covered.

    **Non-Medical Repatriation**

    If a **Covered Person** is **Injured** or **Ill** on a **Covered Trip** and has sufficiently recovered to travel in a regularly scheduled economy class air flight without special equipment or personnel with minimal risk to his or her health, **We** will pay for the increase in cost to change the travel date on the return air flight and/or for an upgrade in the seating, to his or her **Principal Residence** or to the country where he or she is currently assigned (at his or her option). **We** must be contacted prior to the transport and **We** must agree to the change in the travel date and/or upgrade for benefits to be payable. No change or upgrade will be made without the prior recommendation of the attending physician. The upgrade will be subject to **Our** sole discretion.

    **Return of Remains**

    If a **Covered Person** dies while on a **Covered Trip, We** will make arrangements and pay for the local preparation of the body for transport or cremation (not including the cost of cremation), travel clearances and authorizations, standard shipping

container (not including urn or coffin) and transportation of the body or remains to its country of destination. **We** must be contacted prior to the preparation and transportation of the body and **We** must pre-authorize the services and transportation for benefits to be payable.

**Visit to Hospital**

If a **Covered Person** is scheduled to be hospitalized for more than seven (7) consecutive days while on a **Covered Trip**, **We** will arrange for, and cover the cost of, a regularly scheduled round trip economy class air flight of the person chosen by the **Covered Person** to visit the **Covered Person** while he or she is hospitalized. **We** must pre-authorize the transportation for benefits to be payable.

**Return of Child**

If a **Covered Person** is traveling with a **Child(ren)**, who is under nineteen (19) years of age or a **Child(ren)** who prior to age nineteen (19) became incapable of self-sustaining employment by reason of mental retardation or physical handicap and remains chiefly dependent upon the **Covered Person** for support and maintenance, while on a **Covered Trip**, and due to the **Illness** or **Injury** to the **Covered Person**, such **Child(ren)** is left unattended, **We** will arrange for, and cover the cost of, the transport of the **Child(ren)** by a regularly scheduled economy class air flight to the location chosen by the **Covered Person**, and for an attendant, if applicable. **We** must pre-authorize the transportation of the **Child(ren)** and attendant, if applicable, for benefits to be payable.

**Return of Companion**

If a **Covered Person** is traveling with a companion while on a **Covered Trip**, and due to the **Illness** or **Injury** to the **Covered Person** the **Covered Person** cannot complete the **Covered Trip** as scheduled, **We** will pay for the lesser of the change fee for the companion's return air flight or a one way economy class flight. **We** must pre-authorize such costs for benefits to be payable.

- **TRAVEL ASSISTANCE EXCLUSIONS**

  **We** will not provide the **Travel Assistance Plan** if the **Coverage** is excluded under Section VII – General Exclusions of the **Policy**, or if:

  1. the **Covered Trip** was undertaken for the specific purpose of securing medical treatment;
  2. the **Injuries** or **Illness** requiring medical services resulted from the **Covered Person** being under the influence of any controlled substance, unless such controlled substance was prescribed by a physician and was taken in accordance with the prescribed dosage;
  3. with respect to a MEDICAL EVACUATION, the medical care which is being provided is consistent with **Western Medical Standards**. **We** have sole discretion in making that determination;
  4. with respect to MEDICAL EVACUATION, it is not medically necessary to transport the **Covered Person** to another hospital or medical facility. **We** have the sole discretion in making that determination;
  5. based upon the medical condition of the **Covered Person** and/or the local conditions and circumstances, **We** determine that MEDICAL EVACUATION or MEDICAL REPATRIATION is not appropriate. **We** have sole discretion in making that determination;
  6. any local, state, country or international law prohibits the provision of the transportation or services provided for under this plan. **We** will be fully and completely excused from performance and discharged from any contractual obligation;
  7. **We** did not pre-authorize the transportation and/or services.

- **TRAVEL ASSISTANCE DEFINITIONS**

  For purposes of this **Travel Assistance Plan** only, the following definitions apply:

  "**Covered Trip**" means when a **Covered Person** is traveling more than 100 miles from his or her **Principal Residence** and such travel is covered under the **Policy** and is not excluded under the TRAVEL ASSISTANCE EXCLUSIONS set forth above.

  "**Illness**" or "**Ill**" means a sickness or disease which impairs normal functions of the body.

  "**Injured**" "**Injury**" or "**Injuries**" means a bodily **Injury** or **Injuries** and is not limited to accidental bodily injuries.

  "**Principal Residence**" means the legal domicile of the **Covered Person**.

"**Western Medical Standards**" means generally accepted medical standards comparable to those in the United States, Canada or Western Europe.

For the purpose of the **Travel Assistance Plan**, if there are any differences in the definition of a term between the **Travel Assistance Plan** and the **Policy**, the definition in the **Travel Assistance Plan** will govern.

- **TRAVEL ASSISTANCE - OTHER PROVISIONS**

  **Reservation of Rights**

  **We** reserve the right to suspend, curtail or limit **Our** coverage in any area in the event of rebellion, riot, military uprising, war, terrorism, labor disturbance, strike, nuclear accident, act of God or refusal of authorities to permit **Us** to provide services or in any country for which a travel warning has been issued by the Department of State of the United States of America.

  **Scope**

  **Illness**, as covered under this **Travel Assistance Plan,** is solely covered under this **Travel Assistance Plan,** and in no way supercedes or modifies the other **Coverages** provided under this **Policy.**

To contact **Us** regarding this **Travel Assistance Plan,** the Covered Person must call 1-800-263-0261 from the U.S. or Canada; and collect from anywhere else in the world at +1-416-977-0277.

## SECTION VII – GENERAL EXCLUSIONS

A loss will not be a **Covered Loss** if it is caused by, contributed to, or results from:

1. suicide or any attempt at suicide while sane or intentionally self-inflicted **Injury** or any attempt at intentionally self-inflicted **Injury**;
2. war or any act of war, whether declared or undeclared;
3. involvement in any type of active military;
4. illness or disease, regardless of how contracted; medical or surgical treatment of illness or disease; or complications following the surgical treatment of illness or disease; except for bacterial infections due to **Accidental** ingestion of contaminated foods;
5. participation in the commission or attempted commission of any felony, or an assault;
6. parasailing, bungee jumping, heli-skiing, scuba diving or any other extra-hazardous activity;
7. being intoxicated while operating a motor vehicle.
   a. An **Insured** will be conclusively presumed to be intoxicated if the level of alcohol in his or her blood exceeds the amount at which a person is presumed, under the law of the locale in which the **Accident** occurred, to be intoxicated, if operating a motor vehicle.
   b. An autopsy report from a licensed medical examiner, law enforcement officer reports, or similar items will be considered proof of the **Insured's** intoxication.
8. being under the influence of any prescription drug, narcotic, or hallucinogen, unless such prescription drug, narcotic, or hallucinogen was prescribed by a physician and taken in accordance with the prescribed dosage;
9. travel or flight in any aircraft except to the extent stated in the **Coverage** Section;
10. release, whether or not accidental, or by any person unlawfully or intentionally, of nuclear energy or radiation, including sickness or disease resulting from such release;
11. a cardiovascular event or stroke caused by exertion prior to or at the same time as an Accident;
12. alcoholism, drug addiction or the use of any drug or narcotic except as prescribed by a licensed medical provider operating within his or her scope of authority.

## SECTION VIII – GENERAL LIMITATIONS

**Limitation on Multiple Covered Losses.** If an **Insured** suffers more than one loss as a result of the same **Accident, We** will pay only one benefit, the largest benefit.

**Limitation on Multiple Benefits.** If an **Insured** can recover benefits under more than one of the following benefits: **Accidental Death Benefit, Accidental Dismemberment and Covered Loss of Use Benefit, Coma Benefit,** as a result of the same **Accident,** the most **We** will pay for these benefits in total is the **Insured's Principal Sum.**

**Limitation on Multiple Hazards.** If an **Insured** suffers a **Covered Loss** that is covered under more than one **Hazard, We** will pay only one benefit, the largest benefit.

## SECTION IX - TERMINATION OF INSURANCE

**A. Policy Termination.**

Termination by **Policyholder**. The **Policyholder** may terminate this **Policy** on the first renewal date or at any time after that date by delivering to **Us** a written notice to end this **Policy** at least sixty (60) days in advance of such termination. **We** will calculate and return the unearned premium, if any, using a standard short rate table. The **Policyholder** will send **Us** any additional amounts owed, if any, between the **Policy's** paid to date and the official date of termination.

**Termination by Us.** **We** may terminate this **Policy** by giving the **Policyholder** at least one hundred twenty (120) days notice of **Our** intent to terminate. Such notice will state the exact date the **Policy** will terminate. **We** may also end this **Policy** for non-payment of premium on any premium due date if the payment is not received prior to the end of the **Grace Period**. **We** will mail a notice of such termination to the **Policyholder's** last address shown in **Our** records.

**B. Termination of Individual's Insurance.**

**Insured.** Insurance terminates at the end of the month for which premium has been paid and during which any of the following occurs:

    **1.** the **Policy** is terminated;

    **2.** the **Insured** ceases to be eligible for insurance;

    **3.** the **Insured** fails to pay the required premium, if the **Insured** is so required;

    **4.** the **Insured** retires.

## SECTION X - HOW TO FILE A CLAIM

**A. Notice.** The **Insured** or the beneficiary, or someone on their behalf, must give **Us** written notice of the **Covered Loss** within ninety (90) days of such **Covered Loss**. The notice must name the **Insured**, and the **Policy Number**. To request a claim form, the **Insured** or the beneficiary, or someone on their behalf may contact **Us** at 1-866-841-4771. The notice must be sent to the Claims Department, Zurich American Insurance Company, P.O. Box 968041, Schaumburg, IL 60196-8041, or any of **Our** agents. Notice to **Our** agents is considered notice to **Us**.

**B. Claim Forms.** **We** will send the claimant proof of **Covered Loss** forms within fifteen (15) days after **We** receive notice. If the claimant does not receive the proof of **Covered Loss** form in fifteen (15) days after submitting notice, he or she can send **Us** a detailed written report of the claim and the extent of the **Covered Loss**. **We** will accept this report as a proof of **Covered Loss** if sent within the time fixed below for filing a proof of **Covered Loss**.

**C. Proof of Covered Loss.** Written proof of **Covered Loss**, acceptable to **Us**, must be sent within ninety (90) days of the **Covered Loss**. Failure to furnish proof of **Covered Loss** acceptable to **Us** within such time will neither invalidate nor reduce any claim if it was not reasonably possible to furnish the proof of **Covered Loss**, and the proof was provided as soon as reasonably possible.

## SECTION XI - PAYMENT OF CLAIMS

**A. Time of Payment.** **We** will pay claims for all **Covered Losses**, other than **Covered Losses** for which this **Policy** provides any periodic payment, immediately upon receipt of written proof of loss that is acceptable to **Us**. Unless an optional periodic payment is stated or chosen, any **Covered Loss** to be paid in periodic payments will be paid at the end of each four-week period. The unpaid balance, which remains when **Our** liability ends, will then be paid when **We** receive the proof of **Covered Loss** that is acceptable to **Us**.

**B. Who We Will Pay.**

    **1.** **Loss of Life of an Insured.** **Covered Losses** resulting from the **Insured's** death are paid to the named beneficiary at the time of death. If there is no beneficiary named or the named beneficiary predeceases or dies at the same time as the **Insured**, **We** will pay the benefit to the beneficiary named by the **Insured** for the **Policyholder's** Group Life Insurance policy. If there is no beneficiary named by the **Insured** for the **Policyholder's** Group Life Insurance policy, or the named beneficiary predeceases or dies at the same time as the **Insured**, **We** will pay the benefit to the **Insured's** survivors in the following order:

        **a.** the **Insured's** legally married **Spouse/ Domestic Partner**;

        **b.** the **Insured's Child(ren)**;

        **c.** the **Insured's** parents;

        **d.** the **Insured's** brothers and sisters;

        **e.** the **Insured's** estate.

2.   All Other Claims. Benefits are to be paid to the **Insured**.

C.   **Physical Examination and Autopsy.** We have the right to examine an **Insured** when and as often as **We** may reasonably request while the claim is pending. Such examination will be at **Our** expense. **We** can have an autopsy performed, at **Our** expense, unless forbidden by law.

D.   **Choice of Service Provider.** The **Insured** has the sole right to choose his or her duly licensed physician and hospital.

## SECTION XII - GENERAL POLICY CONDITIONS

A.   **Beneficiaries.** The **Insured** has the sole right to name a beneficiary. The beneficiary has no interest in the **Policy** other than to receive certain payments. The **Insured** may change the beneficiary at any time unless he or she has assigned the interest in the **Policy**. In such case, the person to whom he or she has assigned the interest in this **Policy** may have the right to change the beneficiary. Consent to a change by a prior beneficiary is not needed unless the previous beneficiary was designated as irrevocable. Any beneficiary designation must be in writing on a form acceptable to **Us**.

B.   **Change or Waiver.** A change or waiver of any terms or conditions of this **Policy** must be issued by **Us** in writing and signed by one of **Our** executive officers. No agent has authority to change or waive **Policy** terms or conditions. A failure to exercise any of **Our** rights under this **Policy** will not be deemed as a waiver of such rights in the same or future situations.

C.   **Clerical Error.** A clerical error or omission will not increase or continue an **Insured's Coverage**, which otherwise would not be in force. If an **Insured** applies for insurance for which he or she is not eligible, **We** will only be liable for any premiums paid to **Us**.

D.   **Conformity with Statute.** Terms of this **Policy** that conflict with the laws of the state where it is delivered are amended to conform to such laws.

E.   **Entire Contract.** This **Policy**, the **Policyholder** application, **Insured** enrollment materials, and any attachments represent the entire insurance contract between the **Policyholder** and **Us**.

F.   **Grace Period.** Premiums are due for this **Policy** on or before the premium due date or renewal date, whichever applies. If the **Policyholder** does not pay a renewal premium when it is due, there is a thirty-one (31) day **Grace Period** to pay. During the **Grace Period**, the **Policy** will stay in force. The **Policyholder** will not have a **Grace Period** if **We** have given notice, at least thirty (30) days in advance, that **We** are going to terminate this **Policy**.

G.   **Insured Certificates.** We will give to the **Policyholder** a **Certificate**, in either paper or electronic format, for their **Insureds**, where required by state law. The **Policyholder** will either give or make these **Certificates** available to the **Insureds**. Such **Certificate** will contain a summary of terms that affect benefits.

H.   **Policyholder Records.** The **Policyholder** will keep a record of the **Coverage**, premium and other pertinent administrative information for each **Insured**, which, if acceptable to **Us** will be deemed to be a part of the **Policy**. We may examine these records at reasonable times while the **Policy** is in force and for six years after the termination of the **Policy**. The **Policyholder** will report to **Us** within a reasonable time all changes in information regarding an **Insured**. The **Policyholder** will indemnify **Us** for any benefits or other payments that are caused in whole or in part by the **Policyholder's** negligence or error in performing the record keeping function.

I.   **Suit Against Us.** No action on this **Policy** may be brought until sixty (60) days after written proof of **Covered Loss** has been sent to **Us**. Any action must commence within three (3) years, (five (5) years in Kansas and Tennessee; and six (6) years in South Carolina and Wisconsin) of the date the written proof of **Covered Loss** was required to be submitted. If the law of the state where the **Insured** lives makes such limit void, then the action must begin within the shortest time period permitted by law.

J.   **Renewal.** This **Policy** will automatically renew for an additional twelve-month period unless either party expresses its intent not to renew as specified by **Policy** termination provisions.

K.   **ERISA Claims Fiduciary.** The **Policyholder** agrees that the **Policy** constitutes the plan and plan document under the Employee Retirement Income Security Act of 1974 as amended (ERISA). The **Policyholder** designates **Us** as the claims fiduciary of this plan and gives **Us** the discretionary authority to determine eligibility for benefits and to construe the terms of the plan. The **Policyholder** agrees to comply with the disclosure and reporting requirements of ERISA regarding the plan and **Our** designation and authority as the claims fiduciary.

L.   **Assignment of Interest.** A transfer of interest is binding when **We** receive written notice on a form acceptable to **Us**. **We** have no duty to confirm that a transfer is valid.

**M.  Newly Acquired Corporation** If the **Policyholder** acquires a corporation through stock purchase, exchange of stock or otherwise, and notifies **Us** of such acquisition within ninety (90) days thereafter, the eligible employees of the **Newly Acquired Corporation** will be insured under this **Policy** as of the effective date of such acquisition.

If the **Policyholder** does not notify **Us** and provide **Us** with the underwriting information necessary for **Us** to determine the amount of additional premium required, if any, within the ninety (90) days, or does not pay such additional premium, if any, as required, the **Coverage** for the employees of the **Newly Acquired Corporation** will terminate.  However, the **Policyholder** will be liable for the payment of any premium required for the period such **Coverage** was in effect.

**Note:**  The above reporting provision only applies to corporations with more than 200 employees.  For corporations with less than 200 employees, reporting of such acquisition will not be required, and **Coverage** will be automatic for the duration of the **Policy** term.

**Edward D. Jones & Co. Employees Health & Welfare Program**
**GTU 4379707**
**Effective: January 1, 2013**

AMENDATORY ENDORSEMENT
**Administrative Change**



**ZURICH**®

ZURICH AMERICAN INSURANCE COMPANY
Schaumburg, Illinois

This endorsement, effective <u>January 1, 2013</u>, forms a part of Policy No. <u>GTU 4379707</u>, issued to <u>Edward D. Jones & Co.</u> <u>Employees Health & Welfare Program</u>.

**AMENDMENTS TO THE POLICY**

It is hereby understood and agreed that effective January 1, 2013 the following changes will take place in the **Policy**:

I.    The following **Covered Losses** are added to the **Covered Loss of Use** schedule of the **Accidental Dismemberment and Covered Loss of Use Benefit** of the Policy SECTION V – BENEFITS:

| Covered Loss of | Benefit |
|---|---|
| 9.   One arm at elbow | 67.5% of **Principal Sum** |
| 10.  One leg below the knee | 60% of **Principal Sum** |

II.   The following exclusions are deleted in their entirety from the **Policy SECTION VII – GENERAL EXCLUSIONS:**

6.   parasailing, bungee jumping, heli-skiing, scuba diving or any other extra-hazardous activity;

10.  release, whether or not accidental, or by any person unlawfully or intentionally, of nuclear energy or radiation, including sickness or disease resulting from such release;

11.  a cardiovascular event or stroke caused by exertion prior to or at the same time as an Accident;

12.  alcoholism, drug addiction or the use of any drug or narcotic except as prescribed by a licensed medical provider operating within his or her scope of authority.

Except for the above, this Amendatory Endorsement does not vary, alter, waive, or extend any of the terms of the **Policy** to which it is attached.

Endorsement No. <u>1</u>

Signed for by Zurich American Insurance Company _____          Date: <u>January 1, 2013</u>

U-VA-104-A (MO)   (09/06)
Page 1 of 1

# Civil Union Endorsement



**ZURICH**

**ZURICH AMERICAN INSURANCE COMPANY**
1400 American Lane
Schaumburg, Illinois 60196

### THIS ENDORSEMENT CHANGES THE POLICY/CERTIFICATE. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the Edward D. Jones & Co. Employees Health & Welfare Program Policy/Certificate.

It is hereby understood and agreed that the following changes are made and incorporated into the Policy/Certificate:

### PURPOSE:

Illinois law requires that health insurers offer coverage to parties to a civil union that is equivalent to coverage provided to spouses. This endorsement is part of and amends this policy, contract or certificate to comply with Illinois law.

### DEFINITIONS, TERMS, CONDITIONS AND PROVISIONS:

The definitions, terms, conditions or any other provisions of the policy, contract, certificate and/or riders and endorsements to which this mandatory endorsement is attached are hereby amended and superseded as follows:

Terms that mean or refer to a civil union or that may be construed to mean or refer to a civil union are "marriage", "spouse", "family", "immediate family", "dependent", "next of kin", and any other such terms that denote a spousal relationship according to Illinois law.

Terms that mean or refer to the dissolution of a marriage, such as "declaration of invalidity", "judgment of dissolution", and any other such terms that include the dissolution of a civil union established according to Illinois law. Dissolution of a civil union shall be governed by the Illinois Marriage and Dissolution of Marriage Act.

### CAUTION: FEDERAL LAW RIGHTS MAY OR MAY NOT BE AVAILABLE:

Illinois law grants parties to a civil union the same benefits, protections and responsibilities that flow from marriage under state law. However, some or all of the benefits, protections and responsibilities related to health insurance that are available to married persons under federal law may not be available to parties to a civil union. For example, federal law, the Employee Income Retirement Security Act of 1974 known as "ERISA" controls the employer/employee relationship with regard to determining eligibility for enrollment in private employer health benefit plans. Because of ERISA, Act 91 does not state requirements pertaining to a private employer's enrollment of a party to a civil union in an ERISA employee welfare benefit plan. However, governmental employers (not federal government) are required to provide health benefits to the dependents of a party to a civil union if the public employer provides health benefits to the dependents of married persons. Federal law also controls group health insurance continuation rights under "COBRA" for employers with 20 or more employees as well as the Internal Revenue Code treatment of health insurance premiums. As a result, parties to a civil union and their families may or may not have access to certain benefits under this policy, contract, certificate, rider or endorsement that derive from federal law. You are advised to seek expert advice to determine your rights under this contract.

Except for the above, this endorsement does not vary, alter, waive, or extend any of the terms of the **Policy/Certificate** to which it is attached.

Endorsement No. 2

Effective Date: January 1, 2013  Attached to and forming a part of Policy/Certificate No. GTU 4379707

Signed for Zurich American Insurance Company by: _____    Date: January 1, 2013

Signed for the Policyholder by: _____    Date: _____
U-GU-567-A IL (07/11)                                                      Page 1 of 1

AMENDATORY ENDORSEMENT
**Administrative Change**



**ZURICH** ®

ZURICH AMERICAN INSURANCE COMPANY
Schaumburg, Illinois

This endorsement, effective <u>March 1, 2014</u> forms a part of **Policy** No. <u>GTU 4379707</u>, issued to <u>Edward D. Jones & Co.</u> <u>Employees Health & Welfare Program.</u>

I.   It is hereby understood and agreed that effective March 1, 2014 the following **Class** is added to and becomes part of **SECTION I – ELIGIBILITY AN DEFEFCITVE DATES OF INSURANCE** of the **Policy; and,** eligible individuals will be entitled to all hazards, benefits and **coverages** under this **Policy:**

      **Class III:**   The Family Members and Guests while traveling on trips at the direction and expense of the **Policyholder.**

II.   It is also understood and agreed that effective March 1, 2014 the following **Principal Sum** is added under the **Principal Sum** heading of **SECTION II – SCHEDULE** of the Policy:

      **Class III:**       $25,000

Except for the above, this Amendatory Endorsement does not vary, alter, waive, or extend any of the terms of the **Policy** to which it is attached.

Endorsement No. <u>3</u>

Signed for by Zurich American Insurance Company *Nancy D. Mueller*          ˙ Date: <u>March 8, 2014</u>

(RK, 3/8/14)

AMENDATORY ENDORSEMENT
**Administrative Change**



**ZURICH**

ZURICH AMERICAN INSURANCE COMPANY
Schaumburg, Illinois

This endorsement, effective January 1, 2015 forms a part of **Policy** No. GTU 4379707, issued to Edward D. Jones & Co. Employees Health & Welfare Program.

It is hereby understood and agreed that effective January 1, 2015 the rate listed under the "Premium" heading of **SECTION II -- SCHEDULE** of the **Policy** is guaranteed until January 1, 2018.

Except for the above, this Amendatory Endorsement does not vary, alter, waive, or extend any of the terms of the **Policy** to which it is attached.

Endorsement No. 4

Signed for by Zurich American Insurance Company _Nancy D. Mueller_____     Date: March 8, 2014

(RK, 3/8/14)

AMENDATORY ENDORSEMENT
**Administrative Change**



**ZURICH**®

ZURICH AMERICAN INSURANCE COMPANY
Schaumburg, Illinois

This endorsement, effective <u>January 1, 2018</u>, forms a part of **Policy** No. <u>GTU 4379707</u>, issued to <u>Edward D. Jones & Co.</u>
<u>Employees Health & Welfare Program.</u>

It is hereby understood and agreed that effective January 1, 2018 the following changes will take place in the **Policy**:

I.   **Policy** No: GTU 4379707 issued to Edward D. Jones & Co. Employees Health & Welfare Program is hereby renewed beginning with the following date:

   Renewal Date:   January 1, 2018

   This **Policy** is renewed subject to the following modifications:

   The rate listed under the "Premium" heading of **SECTION II – SCHEDULE** of the **Policy** is amended as follows:

   Employee Only:   $0.068 per $1,000 of **Principal Sum** per month
   This rate is guaranteed until January 1, 2021.

   This **Policy** shall automatically renew on the anniversary of the Renewal Date in accordance with the terms of this **Policy**.

II.  The paragraph describing the benefits for the **Home Alteration and Vehicle Modification Benefit** as it appears in **SECTION VI – ADDITIONAL BENEFITS** of the **Policy** is deleted in its entirety and is replaced with the following:

   The maximum amount payable under all provisions of this benefit combined will be the lesser of the actual cost of the home alteration or vehicle modification or $25,000.

III. The benefits listed for the **Rehabilitation Benefit** as they appear in **SECTION VI – ADDITIONAL BENEFITS** of the **Policy** are deleted in their entirety and are replaced with the following:

   The lesser of:
   1.  the actual expenses that are incurred within two (2) years from the date of the **Accident** for the **Rehabilitation Training**; or
   2.  $10,000.

Except for the above, this Amendatory Endorsement does not vary, alter, waive, or extend any of the terms of the **Policy** to which it is attached.

Endorsement No. <u>5</u>

Signed for by Zurich American Insurance Company _____     Date: <u>October 24, 2017</u>

(RK, 10/24/17)

AMENDATORY ENDORSEMENT
**Administrative Change**



**ZURICH**®

ZURICH AMERICAN INSURANCE COMPANY
Schaumburg, Illinois

This endorsement, effective <u>January 1, 2019</u> forms a part of **Policy** No. <u>GTU 4379707</u>, issued to <u>Edward D. Jones & Co.</u>
<u>Employees Health & Welfare Program.</u>

It is hereby understood and agreed that effective January 1, 2019 the following changes will take place in the **Policy:**

I.     **Policy** No: GTU 4379707 issued to Edward D. Jones & Co. Employees Health & Welfare Program is hereby renewed
        beginning with the following date:

            Renewal Date:          January 1, 2019

        This **Policy** shall automatically renew on the anniversary of the Renewal Date in accordance with the terms of this
        **Policy**.

II.    The definition of a Class II eligible as it appears in **SECTION I – ELIGIBILITY AND EFFECTIVE DATES OF**
        **INSURANCE** of the **Policy** is amended as follows:

        **Class II:**    All **Active** full-time Financial Advisors, Service Partners, and General Partners of the **Policyholder**.
                      Full-time status shall be defined in the **Policyholder's Plan**.  Currently full-time status is defined as
                      working 35 hours per week or more.

III.   The definition of **Base Annual Pay** as it appears under the **Benefits** heading in **SECTION II – SCHEDULE** of the
        **Policy** is amended as follows:

        **Base Annual Pay** means the employees' base annual salary including bonuses (excluding Limited Partner
        distributions and commissions).  If the employee has less than one year of service, the employee's rate of basic
        annual pay is an amount equal to 12 times his or her monthly pay.  Basic annual pay is calculated as of December
        31, with the resulting amount used during the following calendar year as the basis for computing the employee's
        Life and Accidental Death & Dismemberment Insurance benefits.  References to employees in this **Policy** also refer
        to General Partners and Service Partners.

Except for the above, this Amendatory Endorsement does not vary, alter, waive, or extend any of the terms of the **Policy** to which
it is attached.

Endorsement No. <u>6</u>

Signed for by Zurich American Insurance Company ___*Mark G. Knipfer*___          Date: <u>January 4, 2019</u>

(RK, 1/4/19)

NOTICE OF PROTECTION PROVIDED BY MISSOURI
LIFE AND HEALTH INSURANCE GUARANTY
ASSOCIATION

This notice provides a *brief summary* of the Missouri Life and Health Insurance Guaranty Association ("the Association") and the protection it provides for policyholders. This safety net was created under Missouri law, which determines who and what is covered and the amounts of coverage.

The Association was established to provide protection in the unlikely event that your life, annuity, or health insurance company becomes financially unable to meet its obligations and is taken over by its insurance department. If this should happen, the Association will typically arrange to continue coverage and pay claims, in accordance with Missouri law, with funding from assessments paid by other insurance companies.

The basic protections provided by the Association are as follows:

- Life Insurance
  - $300,000 in death benefits
  - $100,000 in cash surrender or withdrawal values
- Health Insurance
  - $500,000 in hospital, medical and surgical insurance benefits
  - $300,000 in disability insurance benefits
  - $300,000 in long-term care insurance benefits
  - $100,000 in other types of health insurance benefits
- Annuities
  - $250,000 in withdrawal and cash values

The maximum amount of protection for each individual, regardless of the number of policies or contracts, is as follows:

- $300,000 in aggregate for all types of coverage listed above, with the exception of basic hospital, medical, and surgical insurance or major medical insurance

- $500,000 in aggregate for basic hospital, medical, and surgical insurance or major medical insurance

- $5,000,000 to one policy owner of multiple nongroup policies of life insurance, whether the policy owner is an individual, firm, corporation, or other person, and whether the persons insured are officers, managers, employees, or other persons

*Note: Certain policies and contracts may not be covered or fully covered.* For example, coverage does not extend to any portion(s) of a policy or contract that the insurer does not guarantee, such as certain investment additions to the account value of a variable life insurance policy or a variable annuity contract. There are also various residency requirements and other limitations under Missouri law.

To learn more about the above protections, as well as protections relating to group contracts or retirement plans, please visit the Association's website at www.mo-iga.org, or contact:

Missouri Life and Health Insurance
Guaranty Association
994 Diamond Ridge, Suite 102
Jefferson City, Missouri 65109
Ph.: 573-634-8455
Fax: 573-634-8488

Missouri Department of Insurance,
Financial Institutions and Professional Registration
301 West High Street, Room 530
Jefferson City, Missouri 65101
Ph.: 573-522-6115

Insurance companies and agents are not allowed by Missouri law to use the existence of the Association or its coverage to encourage you to purchase any form of insurance. When selecting an insurance company, you should not rely on Association coverage. If there is any inconsistency between this notice and Missouri law, then Missouri law will control.

U-GU-886-B MO (03/14)

# SANCTIONS EXCLUSION ENDORSEMENT



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

The following exclusion is added to the policy to which it is attached and supersedes any existing sanctions language in the policy, whether included in an Exclusion Section or otherwise:

SANCTIONS EXCLUSION

Notwithstanding any other terms under this policy, we shall not provide coverage nor will we make any payments or provide any service or benefit to any insured, beneficiary, or third party who may have any rights under this policy to the extent that such coverage, payment, service, benefit, or any business or activity of the insured would violate any applicable trade or economic sanctions law or regulation.

The term policy may be comprised of common policy terms and conditions, the declarations, notices, schedule, coverage parts, insuring agreement, application, enrollment form, and endorsements or riders, if any, for each coverage provided. Policy may also be referred to as contract or agreement.

We may be referred to as insurer, underwriter, we, us, and our, or as otherwise defined in the policy, and shall mean the company providing the coverage.

Insured may be referred to as policyholder, named insured, covered person, additional insured or claimant, or as otherwise defined in the policy, and shall mean the party, person or entity having defined rights under the policy.

These definitions may be found in various parts of the policy and any applicable riders or endorsements.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**